## ROBERTSON *v.* UNITED STATES.

No. 388. Argued March 31, 1952.—Decided June 2, 1952.

*Samuel E. Blackham* argued the cause for petitioner. With him on the brief was *Clyde D. Sandgren.*

*Marvin E. Frankel* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Acting Assistant Attorney General Slack* and *Harry Baum.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner is a musician and composer who between the years 1936 and 1939 composed a symphony. In 1945 Henry H. Reichhold, a philanthropist, established a music award offering $25,000, $5,000, and $2,500 for the three

best symphonic works written by native-born composers of this hemisphere. The terms of the offer provided that none of the compositions could be published or publicly performed prior to entry in the contest and that each composition receiving an award would remain the property of the composer except that he would grant the Detroit Orchestra, Inc., (1) all synchronization rights as applied to motion pictures, (2) all mechanical rights as applied to phonograph recordings, electrical transcriptions and music rolls, and (3) the exclusive right to authorize the first performance of the composition in each of the countries whose citizens were eligible to enter the contest and to designate the publisher of the composition.

Petitioner submitted his symphony and on December 14, 1947, won the $25,000 award. He included that amount in his 1947 income tax return as gross income, claimed the benefits of § 107 (b) of the Internal Revenue Code[1] (26 U. S. C. (1946 ed.) § 107 (b), 53 Stat. 878, as amended), and computed the tax as though the $25,000

---

[1] Section 107 (b) provides: "For the purposes of this subsection, the term 'artistic work or invention', in the case of an individual, means a literary, musical, or artistic composition of such individual or a patent or copyright covering an invention of or a literary, musical, or artistic composition of such individual, the work on which by such individual covered a period of thirty-six calendar months or more from the beginning to the completion of such composition or invention. If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him is not less than 80 per centum of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over that part of the period preceding the close of the taxable year but not more than thirty-six calendar months."

had been received ratably during the years 1937, 1938, and 1939. Thereafter he filed a claim for refund on the ground that the award constituted a nontaxable gift.[2] The Commissioner did not allow the claim but determined a deficiency on the ground that the tax should have been computed under § 107 (b) as though the award had been ratably received over the three-year period ending with 1947. Petitioner paid the deficiency, filed a supplemental claim for refund, and brought this suit to obtain it. The District Court held that the award was a gift and not taxable by reason of § 22 (b) (3) of the Internal Revenue Code. The Court of Appeals reversed. 190 F. 2d 680. The case is here on certiorari, 342 U. S. 896, because of the conflict between that decision and *McDermott* v. *Commissioner,* 80 U. S. App. D. C. 176, 150 F. 2d 585, decided by the Court of Appeals for the District of Columbia. And see *Williams* v. *United States,* 114 Ct. Cl. 1, 84 F. Supp. 362.

## I.

In the legal sense payment of a prize to a winner of a contest is the discharge of a contractual obligation. The acceptance by the contestants of the offer tendered by the sponsor of the contest creates an enforceable contract. See 6 Corbin on Contracts, § 1489; Restatement, Contracts, § 521. The discharge of legal obligations—the payment for services rendered or consideration paid pursuant to a contract—is in no sense a gift. The case would be different if an award were made in recognition of past achievements or present abilities, or if payment were given not for services (see *Old Colony Trust Co.* v. *Com-*

---

[2] Section 22 (b) (3) of the Internal Revenue Code provides:

"The following items shall not be included in gross income and shall be exempt from taxation under this chapter: . . .

"The value of property acquired by gift, bequest, devise, or inheritance . . . ."

*missioner,* 279 U. S. 716, 730), but out of affection, respect, admiration, charity or like impulses. Where the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it.

## II.

Section 107 (b) [3] defines "artistic work" as the "musical" or "artistic composition" of an individual, "the work on which . . . covered a period of thirty-six calendar months or more from the beginning to the completion" of the composition. In case the gross income from a particular artistic work in the taxable year is not less than a particular percentage (not material here), the tax attributable to the income of the taxable year may be computed as though it had "been received ratably over that part of the period preceding the close of the taxable year but not more than thirty-six calendar months." The question is whether the amount of the prize should be taxed ratably over the 36 months ending with the close of 1947 (the taxable year in which it was received) or over the last 36 months of the period (1937 to 1939) when petitioner wrote the symphony.

The phrase in question, as it originated (H. R. 7378, 77th Cong., 2d Sess., § 128), read "ratably over the period of thirty-six calendar months ending with the close of the taxable year." In that form the present tax would have been computed as the Commissioner contended, *viz.* the tax would be laid over a period of 36 months extending back from the close of the taxable year. The change in wording does not seem to us to have made a change in meaning. The present words "ratably over that part of the period preceding the close of the taxable year but not more than thirty-six calendar months" would on their face seem to refer to a period ending with the close of

---

[3] See note 1, *supra.*

the taxable year and extending back a maximum of 36 months. That wording was adopted in order to treat the income as though it had "been received ratably over (1) the part of the period of the work which preceded the close of the taxable year, or (2) a period of 36 calendar months, whichever of such periods is the shorter." See S. Rep. No. 1631, 77th Cong., 2d Sess., p. 109. The House Conferees, in agreeing to the change, stated that it "clarifies the language of the House bill." H. R. Conf. Rep. No. 2586, 77th Cong., 2d Sess., p. 43. That history strongly suggests that the purpose was not to change the allowable period of allocation from one ending with the close of the taxable year to one covering any 36 months in the past when the work was done, but to prevent tax reduction by proration of income over a period of work greater than the duration of the work preceding the close of the taxable year. That is the construction given by Treasury Regulations 111, § 29.107–2; [4] and while much more could

---

[4] Section 29.107–2 provides in part:

"The method of allocating the gross income from the artistic work or invention to the taxable years in which falls any of the calendar months (not exceeding 36 calendar months) included within the part of the period of work which precedes the close of the current taxable year may be illustrated by the following examples:

"*Example (1)*. On October 1, 1942, A, an individual, who makes his returns on a calendar year basis and on the basis of cash receipts and disbursements, receives $36,000 in full payment for a musical composition, the work on which was commenced by A on July 10, 1938, and completed on January 29, 1943. Although the period of work covers 55 calendar months, allocations may be made to only the last 36 calendar months included within the part of the period of work which precedes the close of 1942 (the current taxable year). Therefore, $1,000 ($36,000 divided by 36) must be allocated to each of the 36 calendar months preceding January 1, 1943. Accordingly, $12,000 is allocated to 1940, $12,000 to 1941, and $12,000 to 1942 (the current taxable year).

"*Example (2)*. Assume the same facts as in example (1) except that the period of work was commenced by A on July 1, 1941, and

716

be said, it seems to us that that construction fits the statutory scheme.

*Affirmed.*

Mr. Justice Frankfurter, not having heard the argument owing to illness, took no part in the disposition of this case.

Mr. Justice Jackson dissents.

---

completed on September 1, 1944. Although the period of work covers 38 calendar months, allocations may be made to only the 18 calendar months which are included within the part of the period of work which precedes the close of 1942 (the current taxable year). Therefore, $2,000 ($36,000 divided by 18) must be allocated to each of 18 calendar months preceding January 1, 1943. Accordingly, $12,000 is allocated to 1941, and $24,000 to 1942 (the current taxable year)."