Estate of Frances C. Cross, Deceased, Charles Henry Dunning and Thomas DeWitt Vander Voort, Executors v. Commissioner.
Estate of Cross v. Commissioner
Docket No. 94309.
United States Tax Court
T.C. Memo 1964-255; 1964 Tax Ct. Memo LEXIS 86; 23 T.C.M. (CCH) 1542; T.C.M. (RIA) 64255; September 28, 1964
*86 Held, that payments aggregating $22,916.63 received by Frances C. Cross in the taxable year from a corporation of which her deceased husband had been president and a director at the time of his death, are includable in her gross income under section 61(a), I.R.C. 1954, except to the extent of the exclusion provided by section 101(b) of said Code. George F. Schaefer, 654 Madison Ave., New York, N. Y., for the petitioners. Lee A. Kamp, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined a deficiency for the year 1955 in the income tax liability of the petitioners in the amount of $8,856.80. The sole issue to be decided is whether payments aggregating $22,916.63 received by Frances C. Cross in the taxable year from a corporation of which her deceased husband had been president and a director at the time of his death, are includable in her gross income under section 61(a) of the 1954 Code, except to the extent of the exclusion provided by section 101(b) of said Code; or whether such payments constitute a gift under section 102(a) of the Code. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and all exhibits identified therein are incorporated herein by reference. Frances C. Cross (hereinafter referred to as "Frances") died a resident of Middletown, New York, on February 5, 1960, the widow of William E. Cross (hereafter referred to as "William") who predeceased her *88 on January 29, 1955. Following the death of William, Frances had been appointed executrix of his last will and testament, and had acted as such; and she also was a beneficiary under his will of an amount equal to the marital deduction. William's gross estate was valued at over $300,000 for Federal estate tax purposes. Frances filed a 1955 joint Federal income tax return for herself and her deceased husband, with the district director of internal revenue at Albany, New York. William, at the time of his death, was president and a director of Clemson Bros. Inc. (hereinafter referred to as "Clemson"), Middletown, New York, a corporation engaged in the business of manufacturing, selling, and distributing metal cutting saws. For a number of years prior to his death he had been paid a salary of $25,000 a year and the reasonableness of that salary is not here in question. Clemson had been founded in the late 1800's by Frances' father. At the date of William's death, its shareholders, officers, and directors, and their relationship to Frances, were as follows: No. of
Shareholder
shares
Corporate office
Frances
1,728.3105
William
1,010
President and director
Charles H. Dunning (son-in-law of Frances)
565
Vice pres., Sec., Treas-
urer & director
Georgine C. Dunning (daughter of Frances and wife of
Charles H. Dunning)
565
T. D. Vander Voort (son-in-law of Frances)
565
Vice pres. & director
Elizabeth C. Vander Voort (daughter of Frances and wife
of T. D. Vander Voort)
565
Richard D. Clemson (brother of Frances)
8,054.0685
Chairman of board
Virginia C. Schrade (niece of Frances and daughter of
Richard D. Clemson)
400
Chemical Corn Exchange Bank, [1] trustee of trust for bene-
fit of Frances
3,930
Richard D. Clemson, trustee under will of father of Frances
2,617.621
William A. and Virginia C. Schrade, trustees under trust
for benefit of said Virginia C. Schrade
4,000
William A. and Virginia C. Schrade, trustees under an-
other trust for benefit of said Virginia Schrade
1,000
25,000
*89 Other persons who were directors were: William A. Schrade, the husband of Virginia C. Schrade; Richard Canfield, an employee of Clemson, unrelated to Frances; and Wandell M. Mooney, vice president and a trust officer of the Chemical Corn Exchange Bank. After the death of William, one of the directors of the company suggested to some of the other directors that it would be "nice" to make a "gift" to Frances since she would not longer have the benefit of the income of her husband; and that although she was a woman of means she might need assistance in adjusting herself to a smaller income. One of the other directors discussed the matter with the accounting firm which handled Clemson's books and tax returns; and said director was informally advised that payments made to Frances pursuant to a resolution of the board of directors might qualify as a nontaxable gift. Thereupon the accounting firm was directed to draft an appropriate resolution. The resolution thus drafted, and adopted by Clemson's board of directors on February 23, 1955, reads as follows: WHEREAS, the President of our Company, Mr. William E. Cross, died on *90 January 29, 1955, and WHEREAS, he rendered long and faithful service to our Company, we deem it proper to express our appreciation to his widow in some tangible form. Therefore, upon motion duly made and seconded, it was resolved that a death benefit of $5,000.00 be paid to his widow, Mrs. Frances C. Cross at the convenience of the Company, and that the salary of Mr. William E. Cross in the amount of $25,000.00 per annum, be paid to her in monthly payments of $2,083.33 for two years, commencing February first, 1955. Four directors were present at the February 23 meeting: Charles H. Dunning, Wandell M. Mooney, William A. Schrade, and T. D. Vander Voort. Pursuant to the resolution, Frances in 1955 received $5,000 as a death benefit, and also 11 monthly payments in the amount of $2,083.33 each, aggregating $22,916.63. Only these monthly payments are here directly involved. Clemson entered on its books as "Officers' Salaries" the monthly payments made to Frances for the months of February through July 1955. Thereafter all monthly payments (including those previously classified as "Officers' Salaries") were recorded on the books as "Pensions." On the income tax returns which Clemson *91 filed for its fiscal years ended July 31, 1955, and June 30, 1956, it deducted said monthly payments for the year 1955 as "Other Deductions" attached to said returns, these monthly payments likewise were identified as "Pensions." The salary due William for the month of January 1955, in the amount of $2,083.33 was paid by Clemson to his estate. Prior to William's death, Clemson had never made a payment to the widow of any deceased director, officer or employee; and it had no plan providing for such a payment. Frances had never been an officer, director or employee of Clemson, and had never rendered any services to the company. At the time of William's death, Clemson had no obligation to make any payment to either Frances or her husband, except for William's salary for the period from January 1, 1955, to the date of his death on January 29, 1955. At the time of William's death, Clemson was making monthly payments to 10 former employees, none of whom had been an officer, director or shareholder of the company. These payments were not made pursuant to an established or uniform pension plan, but were made because the employees had been associated with the company for a number of *92 years. Whether or not payments were to be made to any former employee was determined by the company on the basis of the facts of each particular case. Clemson paid dividends of $1 per share in 1950 and 1952, and $3 per share in 1951. No dividends were paid in 1953, 1954 or 1955. Clemson had earned surplus in excess of $650,000 during the year 1955. Frances was a woman of independent wealth. She owned several pieces of real property and large amounts of stock, was the beneficiary of two trusts, and received as beneficiary of William, two homes, and a substantial amount of personal property. At her death in 1960 her gross estate was valued at over $900,000 for Federal estate tax purposes. In the joint income tax return which Frances filed for the year 1955, she disclosed her receipt of said payments totaling $22,916.63, but did not include the same in her taxable income. The Commissioner however, in his notice of deficiency herein, determined that said payments are includable in her gross income under section 61(a) of the 1954 Code, except to the extent of the exclusion provided by section 101(b) of said Code. Opinion The Supreme Court of the United States in Commissioner v. Duberstein, 363 U.S. 278, *93 dealt with the question of what constitutes a gift within the meaning of section 102(a) of the Internal Revenue Code of 1954. [2] The Court in that case enunciated certain principles which provide assistance in determining the existence vel non of a gift, as follows: The course of decision here makes it plain that the statute does not use the term "gift" in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntary executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41, it is not a gift. And, conversely, "[where] the payment is in return for services *94 rendered, it is irrelevant that the donor derives no economic benefit from it." Robertson v. United States, 343 U.S. 711, 714. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," Commissioner v. LoBue, 351 U.S. 243, 246; "out of affection, respect, admiration, charity or like impulses." Roberston v. United States, supra, at 714. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." Bogardus v. Commissioner, 302 U.S. 34, 43. "What controls is the intention with which payment however voluntary, has been made." * * * This Court in a number of cases decided after Duberstein has applied the principles set forth in that case to the factual situation presented in each particular case. Since the question is basically factual, the issue must be determined on a case by case basis. Commissioner v. Duberstein, supra; Lucile McCrea Evans, 39 T.C. 570, *95 affd. per curiam (C.A. 6, 1964) 330 F. 2d 518. After considering and weighing all the facts in the present case in light of the principles set forth in Duberstein, we are impelled to conclude, and we here hold, that the payments made by Clemson to Frances were not gifts to her within the meaning of section 102(a) of the 1954 Code, and are therefore includable in her gross income under section 61(a) of the Code. There are several factors which we believe are controlling here. The first and most important of these is that there is no convincing evidence that Clemson intended to make a gift. The idea of making the payments appears to have originated initially with Mooney, a director of Clemson who was a vice president and trust officer of a New York City bank. His reason for suggesting the payments was that he thought it would be a "nice" gesture, and might assist Frances in adjusting to her new status as a widow who would be without the income of her husband. He was aware that Frances was a woman of means and was accustomed to living in a manner befitting her state. For reasons not disclosed by the record, the remaining directors agreed to the suggestion and directed *96 one of their number (Dunning) to confer with the company's accountants regarding the matter. The resolution was drafted by the accounting firm and adopted verbatim by the directors at a meeting attended by four of the six directors (Dunning, Mooney, Vander Voort and Schrade). Schrade was the only director who testified at the trial; and his only testimony as to the intent of the directors in adopting the resolution related to the facts summarized in this paragraph. Thus the only hint of corporate intent found in the record is that one of the directors thought that the making of payments to Frances would be a "nice" gesture and might assist her financially. The second factor is that Frances was a woman of substantial means at the death of William and thus not in financial need. In addition to the testimony regarding Mooney's suggestion, the record discloses that upon her death she left a gross estate valued for Federal estate tax purposes in excess of $900,000. At William's death, she owned several pieces of real property, received income from certain trusts, and owned large amounts of stock. She also received real and personal property from the estate of William. There is no evidence *97 in the record that Frances was in financial need or that the action of the directors of Clemson in adopting the resolution was intended to remedy her financial distress, either real or imagined. We are unwilling to find on the record before us that Clemson passed the resolution in order to assist Frances financially. The third factor is that the company was a closely held corporation. Over two-thirds of the outstanding shares of stock in the company were held by Frances or by trustees for her benefit. The six directors of the company (excluding William) included Frances' brother, two sons-in-law, the husband of her niece, an officer of the corporate trustee holding stock for her benefit, and an unrelated employee of the company. All except her brother and the unrelated employee attended the meeting at which the resolution was adopted. The directors were familiar with Frances' financial status following the death of William. An additional factor is the language of the resolution itself. The language used, while not in itself controlling, does not to our mind suggest that a gift was intended. The resolution speaks of William's "long and faithful service," and of expressing "appreciation" *98 to his widow for such services, in some tangible form. And also the company apparently recognizing that the monthly payments were in the nature of additional compensation for past services rendered to it, took a deduction for the same on its corporate Federal income tax returns as "Pensions"; and labeled them on its books as "Officers' Salaries" and "Pensions." After considering and weighing all the evidence, we conclude and hold that the dominant motive of Clemson for making the payments did not proceed from a "detached and disinterested generosity * * * out of affection, respect, admiration, charity or like impulses" toward Frances; but rather that it proceeded from the constraining force of a "moral obligation" to make some form of payment for the long and faithful services rendered by William to the company. Said payments do not qualify as gifts under the statute. We sustain the determination of the respondent. Decision will be entered for the respondent. Footnotes
1. Now known as the Chemical Bank New York Trust Company.↩
2. SEC. 102. GIFTS AND INHERITANCES. (a) General Rule - Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.↩