WRAPPED TURNBUCKLE ASSEMBLY

APPENDIX E

.Thomas M. FITCH and John S. Harrow,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. KC–2617.

United States District Court
D. Kansas.

March 3, 1969.

Max H. Bergman, Spencer, Fane, Britt & Browne, Kansas City, Mo., Ernest N. Yarnevich, Carson, Dear, Yarnevich, Mahoney, Carey & Fields, Kansas City, Kan., for plaintiffs.

John DeBruyn, Atty., Tax Div., Dept. of Justice, Washington, D. C., Thomas E. Joyce, Asst. U. S. Atty., Benjamin E. Franklin, U. S. Atty., Kansas City, Kan., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THEIS, District Judge.

This case came on for trial before the Court pursuant to agreement of the parties. It is a tax refund suit in which the sole issue is whether a $24,000.00 payment authorized in August, 1962, by

Kansas City Structural Steel Company, a corporation, to Mrs. Marjorie H. Fitch, widow of its deceased president, was a gift within the meaning of the Internal Revenue Code. Income tax was paid on the payment by the fiduciary representatives of the estate of Marjorie H. Fitch (since deceased), for which the instant suit seeks refund. If the payment was a gift to Mrs. Fitch, it was not properly taxable as income to her, and plaintiffs, as fiduciary representatives of her estate, may recover the income taxes previously paid.

## FINDINGS OF FACT

1. It is first important to proper evaluation of the facts adduced in this case from the testimony of witnesses and documentary evidence, to identify the background and capacities, personal and official, of the two parties plaintiff, Thomas M. Fitch and John S. Harrow. Thomas M. Fitch, a co-plaintiff, was a son of H. A. Fitch, Jr.; he is presently executive vice-president (May, 1965) and secretary (August, 1964) of Kansas City Structural Steel Company, a member of its Board of Directors since April, 1966, and a vice-president since August, 1962; he was a co-executor of both the estates of Howard A. Fitch, Jr., deceased (his father), and Marjorie H. Fitch, deceased (his stepmother), and a beneficiary of his father's estate.

Co-plaintiff John S. Harrow was a brother of Marjorie H. Fitch, deceased; he has been president and treasurer of Kansas City Structural Steel Company since August, 1962, following the death of Howard A. Fitch, Jr., has been a vice-president and member of the Board of Directors since 1957; he was a coexecutor of both the estates of Howard A. Fitch, Jr., deceased, and Marjorie H. Fitch, deceased (his sister), and a beneficiary of his sister's estate.

2. Kansas City Structural Company is a corporation with its principal plant and place of business in Kansas City, Missouri, where it began business in 1907 and continued to fabricate, manufacture and sell steel bridges and other structural and building materials.

3. Howard A. Fitch, Jr. was president of the Company from January 19, 1954, until his death on July 29, 1962. Marjorie H. Fitch was the surviving widow of Howard A. Fitch, Jr. and she died on January 6, 1963.

4. At the time of his death, the salary of Howard A. Fitch, Jr. was $12,000.00 per year. The agreement for this salary was the only contract for compensation for his services with the Company. All salary due Howard A. Fitch, Jr. pursuant to his contract of employment for the year 1962, or otherwise, was paid either to him prior to his death or thereafter, to his estate.

5. Marjorie H. Fitch was not at any time an employee, officer or director of the Company, nor did she at any time render any services for the Company.

6. At a meeting of the Company's Board of Directors held on August 12, 1962, the Board adopted a resolution of appreciation and bereavement for the services of their late deceased president, Howard A. Fitch, Jr., sympathy to his family, and voted to pay his widow, Marjorie H. Fitch, the sum of $24,000.00, payable $1,000.00 per month for two years, beginning August 1, 1962, if she be living during this period. On December 11, 1962, at the suggestion of its accountants, the Board voted to accelerate the payment of the $24,000.00 to be made at once, and said sum was, in fact, paid by the Company during 1962.

7. The Kansas City Structural Steel Company sought and was allowed a deduction from its gross income as an ordinary business expense in its 1962 federal income tax return for the year 1962 in the amount of $24,000.00, for the payments made to Marjorie H. Fitch, authorized by the Board of Directors on August 11 and December 11, 1962.

8. Both Entry No. 21 of the file of the case, and Defendant's Exhibit G, indicate payments by the Company of sums of money other than compensation or dividends after the deaths of principal

officers, directors, or departmental heads to the widows of such persons over a period of time from 1947 through 1964, as follows:

| Name | Date of Death | Monthly Salary | Payments Made | Years of Service |
|---|---|---|---|---|
| Thomas W. McCurnin, Erection Supt. | 1/13/47 | $ 500.00 | $ 1,250.00 | 37 |
| L. W. Casler, Erection Supt. | 10/30/51 | 525.00 | 1,575.00 | 32 |
| W. F. Chesley, Production Mgr. | 3/17/53 | 1,000.00 | 3,000.00 | 42 |
| H. A. Fitch, Sr., President | 11/2/53 | 2,083.33 | 26,944.44 | 46 |
| J. A. Swartz, Ass't Vice-Pres. & Dir. of Purchases | 11/17/55 | 1,100.00 | 6,600.00 | 46 |
| A. L. Cooper, General Counsel | 4/16/57 | 300.00 | 2,550.00 | 5 |
| J. C. Fast, Chief Draftsman | 8/2/59 | 950.00 | 3,000.00 | 35 |
| H. A. Fitch, Jr., President & Treasurer | 7/29/62 | 1,000.00 | 24,000.00 | 35 |
| J. A. Vance, Vice-President & Secretary | 7/16/64 | 1,550.00 | 4,650.00 | 56 |

Entry 21 also indicates payments other than compensation or dividends due to principal officers, directors or departmental heads after their respective retirement from Company employment and within their lifetimes, as follows:

| Name | Date Retired | Monthly Salary | Pmts. on or After Retirement | Years of Service |
|---|---|---|---|---|
| Albert R. Norton, Chief Timekeeper | 3/30/61 | $ 375.00 | $ 700.00 | 19 |
| Manuel W. Hufferd, Chief Inspector | 10/31/61 | 500.00 | 1,200.00 | 53 |
| Geo. W. McCamish, Ass't. Treasurer | 10/31/59 | 660.00 | 4,800.00 | 52 |
| Neil G. Lilley, Chairman of Board | 4/30/62 | 1,000.00 | 11,000.00 | 55 |
| Clyde H. Wiseman, Foreman-Assemblers | 12/31/60 | 550.00 | 1,200.00 | 50 |
| John P. Cooper, Vice-President | 4/30/62 | 1,000.00 | 25,750.00 | 57 |
| Loren A. Winchell, Foreman-Temp. Shop | 10/31/61 | 625.00 | 1,200.00 | 49 |
| Norman W. Funk, Dist. Sales Mgr. | 10/31/61 | 400.00 | 600.00 | 42 |
| Warner Lind, Chief Clerk | 10/31/61 | 475.00 | 600.00 | 37 |

All of the above payments by the Company were also deducted for federal income tax purposes as legitimate business expense.

9. The testimony of plaintiff Harrow, president of the Company, indicated that the practice of the payments by the Company to officers, directors or departmental heads after retirement, or to their widows after death, was well-known among the members of the Board of Directors through the years, and a fair inference from the state of the evidence is that this policy or practice of the Company was well-known and intended by the Company to be well-known among all of the principal officers, departmental heads and employees in important positions.

10. The testimony of the co-plaintiffs as officers and directors of the Company as to the laudable intention of the Company to effect a "gift" in its purest sense, is clouded as to credibility and weight by the fact of their conflict-of-interest positions as pecuniary beneficiaries of the tax refund sought.

11. These payments, and the knowledge that the Company Board of Directors would, over the years, reward long and faithful service to the Company, resulted in creating an esprit de corps among the principal executives, which in turn generated loyalty, diligence and efficiency in the accomplishment of Company business and affairs.

12. It is conceded and stipulated by the parties herein that the amount plaintiffs should recover here, if judgment is for plaintiffs upon the issue before the Court, is the principal sum of $5,373.21, plus $171.79 assessed interest thereon.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. While one of the purposes of the Company in paying the $24,000.00 to Marjorie H. Fitch, widow of its deceased president, was to express its appreciation of its late president by a gratuitous gift to his surviving widow, the dominant purpose was to continue and carry on the previous policy or practice of granting posthumous or post-retirement beneficences for long and faithful service to the Company, which created good will and economic benefit to the Company.

3. The intent of the Company must be judged by the totality of circumstances which include the express purpose as shown in the testimony of two officer-directors to show gratitude, but which also include a known or recognized past policy of awarding beneficences over a twenty-year period in eighteen separate instances to Company executives, all of which were deducted from Company gross income for federal income tax purposes as "ordinary and necessary business expense."

4. The $24,000.00 payment was not a gift from the Company to said Marjorie H. Fitch, in the sense contemplated by the statutory provisions of 26 U.S.C.A. § 102(a) so as to be exempt in her estate from the assessment and payment of federal income tax thereon as "income."

## MEMORANDUM OPINION

What is a "gift" under statutory provisions exempting liability of a taxpayer for federal income tax? (26 U.S.C.A. § 102(a)).

Two principal cases are cited and heavily relied upon by plaintiffs as indicating corporations may have the necessary donative intent to make a valid gift nontaxable to the donee as "income," and their urged deduction here from this point is that the corporate payment here to Marjorie H. Fitch was truly a gift. These cases are: Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); and United States v. Kasynski, 284 F.2d 143 (10 Cir., 1960).

Our Tenth Circuit case of United States v. Kasynski, supra, is clearly distinguishable and authoritative here insofar as Judge Breitenstein points out one of the salient facts relied on to hold a valid gift was made to Mrs. Kasynski was the absence of any "plan, policy or custom" of the corporation "of making

payments to widows of its deceased officers or employees."

The *Duberstein* case is most informative in reviewing the judicial criteria useful in judging whether a gratuitous payment of money from one to another is, in fact, a gift exempt from income taxation or subject to such tax. True, the case does stand for the proposition that it is possible under a proper factual situation for an artificial person, i. e., a corporation, to make a gift with requisite donative intent. However, a reading of the case discloses some of the criteria laid down in *Duberstein* to be:

(1) " * * * the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 730, 49 S. Ct. 499, 504, 73 L.Ed. 918.

(2) "And, importantly, if the payment proceeds primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of an economic nature, Bogardus v. Commissioner of Internal Revenue, 302 U.S. 34, 41, 58 S.Ct. 61, 65, 82 L. Ed. 32, it is not a gift.

(3) "And, conversely, '[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it.' Robertson v. United States, 343 U.S. 711, 714, 72 S.Ct. 994, 996, 96 L.Ed. 1237.

(4) "A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosity,' Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 246, 76 S.Ct. 800, 803, 100 L.Ed. 1142; 'out of affection, respect, admiration, charity or like impulses.' Robertson v. United States, supra, 343 U.S. at page 714, 72 S.Ct. at page 996.

(5) "And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's 'intention.' Bogardus v. Commissioner of Internal Revenue, 302 U.S. 34, 43, 58 S.Ct. 61, 65, 82 L.Ed. 32. 'What controls is the intention with which payment, however voluntary, has been made.' "

Applying these factors and the distinction in the *Kasynski* case with the case at bar, this Court has no difficulty in finding from the evidence that no legal duty ever existed on the donor Company to make the payment to Mrs. Fitch. The Court balks, however, at closing his eyes to the past, present and continuing practice of the Company to confer its largess on "good and faithful servants" of proven executive capacity through the years, all deducted as a necessary business expense for corporate income tax purposes, and have the claim made by self-interest witnesses that the gift here was made from the "detached and disinterested generosity" of the warm-hearted corporate personality.

The legitimate and inescapable inference this Court draws from all the evidence, savoring its weight and credibility, is that this was a comparatively small, family-run, close-knit corporation, where longevity and diligence in service to the corporation by its executives was rewarded and encouraged by an unannounced, non-formula, but well-known policy of the corporation voting post-retirement or posthumous payments to virtually all top personnel. Counsel for plaintiffs argue that because payments made by the Company were "entirely unpredictable, being sporadic, irregular and without formula as to amount," the "corporate officers and department heads had no basis for expecting that their widows would receive gratuities from the Company, and the Company did nothing to encourage it." This assertion is either a wishful or self-serving distortion of a common sense fact of life that man will usually act in his own, apparent self-interest.

The historic policy of the Company as to voluntary beneficences had a highly

advantageous economic effect in getting top executive personnel to literally give their "all" for the Company, without corporate liability for a general pension plan. Under its past practice of these beneficences, neither can this Court say the Company had not created an atmosphere of moral duty toward the wife of its late deceased president.

The tax paid by the representatives of the estate of Marjorie H. Fitch upon the $24,000.00 payment from the Company to her was properly due and owing. The Clerk of this Court is hereby instructed to enter judgment for the United States, taxing the costs of this action to the plaintiffs.