SPEROS AND MARIA ATHANASIOS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Athanasios v. Commissioner
Docket No. 20105-93
United States Tax Court
T.C. Memo 1995-72; 1995 Tax Ct. Memo LEXIS 73; 69 T.C.M. (CCH) 1902; February 15, 1995, Filed *73 Decision will be entered under Rule 155. For petitioners: James L. Chase. For respondent: Linda J. Wise. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 168,946 in petitioners' 1989 Federal income tax. After concessions, we must decide (1) to what extent petitioners qualify for nonrecognition treatment pursuant to section 355[1] on the receipt of stock distributed in the corporate split-off transaction involved in this case, and (2) the amount of gain petitioners must recognize on the disposition of three real properties. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Pensacola, Florida, at *74 the time they filed their petition in this case. Speros Athanasios (petitioner) and Christ Bithos (Bithos) became business associates in the late 1960's, when they opened a restaurant in Pensacola, Florida, called Angus Steak Ranch. The restaurant was owned and operated by Angus Steak Ranch, Inc. (Angus), a Florida corporation. Petitioners owned 50 percent of the stock of Angus, and Bithos and his wife Catina Bithos (collectively, the Bithoses) owned the remaining 50 percent of the stock. Angus incorporated a wholly owned subsidiary, Boy on a Dolphin, Inc. (Boy), also a Florida corporation. In 1986, Boy acquired a restaurant business in Pensacola Beach, Florida, from Surfside Marina, Inc., and began operating a restaurant called Boy on a Dolphin. Petitioner and Bithos actively participated in both restaurant businesses. In addition to the stock in Angus, petitioners and the Bithoses each owned 50-percent interests in three improved real properties, known as the Angus Property, the Moreno Street Property, and Maria's Property. The Angus Steak Ranch building and parking lot were situated on the Angus Property, and Angus paid rent to petitioners and the Bithoses for use of the *75 Angus Property and improvements. The Moreno Street Property was a rental property adjacent to the Angus Property, but it was not used in the restaurant business. Maria's Property was not adjacent to either of the other properties, and it was used in a separate, unrelated business. Petitioners took depreciation deductions on all three properties. After many years of working together, animosity developed between petitioner and Bithos, making it impossible for them to stay in business together. Consequently, petitioner announced his desire to end relations as business associates and to separate business interests. During the process of separation petitioner and Bithos were never amicable, and became belligerent as the separation progressed. In the first attempt to separate the business interests, petitioners, the Bithoses, Angus, and Boy (collectively, the parties to the split-off) signed an agreement dated March 30, 1988 (the First Agreement). The parties were represented by counsel in the negotiations. The First Agreement was never carried out, at least in part because the Bithoses could not obtain financing. However, after the First Agreement was signed, petitioners began *76 running Boy on a Dolphin themselves and the Bithoses began running Angus Steak Ranch themselves. Another attempt at an agreement was made in July, 1988, without success. Eventually, petitioners filed suit against the Bithoses for specific performance of the First Agreement. Finally, an addendum (the Addendum) to the First Agreement was prepared by counsel in January 1989. The Addendum was signed by the parties to the split-off on January 4, 1989. It resolved petitioners' lawsuit against the Bithoses. Petitioners signed the Addendum because the prospect of losing Boy on a Dolphin (the restaurant that they were running and expected to own), brought about from the Bithoses' failure to close the First Agreement, created an acute desire to separate the businesses immediately. Both the First Agreement and the Addendum contemplated a separation of the business interests of petitioners and the Bithoses, whereby petitioners would emerge as the owners of 100 percent of the Boy stock, and the Bithoses would emerge owning 100 percent of the Angus stock. Petitioners and the Bithoses intended the separation to fall under section 368(a)(1)(D) and section 355, in order to minimize or prevent *77 the recognition of taxable gain. The parties to the split-off accomplished the separation in accordance with the terms of the Addendum, which altered virtually all of the terms of the First Agreement. Pursuant to the Addendum, Angus would assume the debt of Boy in the amount of $ 300,000, and this assumption would be treated as a capital contribution into Boy. In addition, the Bithoses would contribute $ 65,000 in cash and their 50-percent interest in Maria's Property to the capital of Boy. The Bithoses would also transfer a note with face value of $ 135,000 to petitioners. In exchange for the note, petitioners would transfer their 50-percent interests in both the Angus Property and the Moreno Street Property to the Bithoses, subject to liabilities. Finally, Angus would transfer 100 percent of the Boy stock to petitioners in exchange for all of petitioners' stock in Angus. After these transactions, petitioners would hold all of the Boy stock and a note for $ 135,000 (and, of course, they would retain their 50-percent interest in Maria's Property). Moreover, petitioners would have obtained the benefit of a release from liability on the Angus Property and the Moreno Street Property. *78 Boy would hold a 50-percent interest in Maria's Property and $ 65,000 in cash, and Boy would have obtained the benefit of a $ 300,000 reduction in debt. Angus would hold no additional assets (since it received only its own stock in the exchange), and the Bithoses would hold all the outstanding Angus stock and 100 percent of both the Angus Property and the Moreno Street Property. On June 6, 1989, 5 months after they signed the Addendum, the parties to the split-off carried out the terms of the Addendum with one exception: part of the $ 65,000 cash payment was made prior to June 6. The first portion, $ 28,760, reflected debts of Boy actually paid by Angus before closing the Addendum, and this amount was credited against the $ 65,000. After subtracting out this credited amount and closing costs charged to Boy, the remainder of $ 32,000.27 was paid to Boy when the Addendum closed. Otherwise, the parties to the split-off carried out the terms of the Addendum. In particular, (1) petitioners exchanged the Angus Property and the Moreno Street Property, subject to liabilities, for the note for $ 135,000; (2) petitioners exchanged their stock in Angus for all the stock in Boy; and (3) *79 the transaction occurred on June 6, 1989. On June 6, 1989, petitioners' share of liabilities of the Angus Property and the Moreno Street Property equaled $ 100,170. Petitioners' bases in their 50-percent interests in the Angus Property and the Moreno Street Property totaled $ 71,492. On October 27, 1989, petitioners and Boy sold Maria's Property for $ 130,000. The amount realized by petitioners on the sale of their 50-percent interest was $ 65,000. This amount included petitioners' share of liabilities assumed by the buyer. Petitioners' basis in their 50-percent interest in Maria's Property was $ 31,474. OPINION Issue 1. Section 355 Nonrecognition of Gain on Transfers of Stock
Petitioners contend that substantially this transaction falls under section 355. Essentially, they argue that they have met all of the requirements of section 355, and that no gain or loss should be recognized on their receipt of Boy stock. Underlying this argument is their belief that this transaction should be accepted by the Court as characterized in the Addendum because the parties to the split-off dealt at arm's length throughout their negotiations. In particular, petitioners argue that *80 the amount realized on the transfer of the 50-percent interests in the Angus Property and the Moreno Street Property was only the note of $ 135,000 and the Bithoses' assumption of liabilities of $ 100,170. Petitioners' view of the transaction requires them to recognize, at most, gain to the extent that the amount realized on the transfer of the two properties (i.e., $ 235,170) exceeds their basis. They argue that the remainder of the transaction involved the exchange of their Angus stock for all of the Boy stock, and that section 355 prevents recognition on this receipt of the Boy stock. To the contrary, respondent argues that the form used by petitioners and the Bithoses did not comport with the substance of the transaction. Thus, respondent would value the Angus Property and the Moreno Street Property independently from the Addendum. According to respondent, the value of the two transferred properties exceeded the $ 135,000 note and the assumption of liabilities of $ 100,170, and the value of the transferred Angus stock exceeded the value of the Boy stock received. In respondent's view, petitioners engaged in two transfers: (1) They transferred part of their Angus stock for *81 all of the Boy stock, and (2) they transferred the remainder of the Angus stock, the Angus Property, and the Moreno Street Property for the note for $ 135,000, the assumption of liabilities of $ 100,170, the $ 300,000 assumption of debt of Boy, the $ 65,000 cash, and the 50-percent interest in Maria's Property. Respondent concedes that the receipt of Boy stock under the first transfer qualifies for nonrecognition treatment under section 355. However, the second transfer, according to respondent, does not qualify under section 355 because it involved a sale of assets, not a distribution of stock to which section 355 applies. Respondent's position is based in part on the belief that the $ 300,000 payment on debt, the $ 65,000 cash payment, and the 50-percent interest in Maria's Property were received by petitioners instead of Boy. We agree with petitioners. We think the substance of the transaction comports with its form. Section 355 provides for the nonrecognition of gain by a shareholder in a corporation following certain transfers of stock by the corporation to the shareholder. The transaction qualifies for nonrecognition treatment when the shareholder meets the requirements *82 of section 355 and the regulations thereunder. If all of the requirements are met, then "no gain or loss shall be recognized to (and no amount shall be includible in the income of) such shareholder * * * on the receipt of such stock". Sec. 355(a)(1). Although respondent concedes that section 355 applies to a limited extent, such concession is based on a different understanding of the facts than we have found. Therefore, we will give respondent's concession a limited role, and will analyze all the requirements for nonrecognition to decide whether petitioners have satisfied them. Distribution
The distribution requirements in section 355(a)(1)(A) require the distributing corporation to distribute to a shareholder, with respect to its stock, solely stock of a controlled corporation. Here Angus made the distribution to its shareholders, petitioners; Angus distributed solely stock; and the stock was the stock of Boy, a corporation that Angus controlled before the distribution. Petitioners have satisfied this requirement. The distributing corporation must distribute all of the stock of the controlled corporation that it holds, or enough stock to constitute control. Sec. 355(a)(1)(D). *83 Here Angus distributed all of the outstanding stock of Boy to petitioners. Petitioners have satisfied this requirement. Corporate Business Purpose
There must be a corporate business purpose for the distribution. Gregory v. Helvering, 293 U.S. 465 (1935); sec. 1.355-2(b), Income Tax Regs.[2] Nonrecognition treatment is available only where "readjustments of corporate structures [are] required by business exigencies". Sec. 1.355-2(b)(1), Income Tax Regs. If the corporations can accomplish their corporate business purpose "through a nontaxable transaction that does not involve the distribution of stock of a controlled corporation and which is neither impractical nor unduly expensive," then the distribution is not deemed to have been made for that corporate business purpose. Sec. 1.355-2(b)(3), Income Tax Regs. Disagreement among shareholders as to the means for advancing common business interests is a valid corporate business purpose for a distribution in separation of the business interests. Badanes v. Commissioner, 39 T.C. 410, 415 (1962). In this case the relationship between petitioner and Bithos had become *84 so strained that they no longer had common business interests to advance. Moreover, petitioners could only achieve the independent ownership of Boy by a distribution of the Boy stock. Petitioners have satisfied the requirement of a corporate business purpose. Nondevice
The transaction must not be used principally as a device for the distribution of earnings and profits. Sec. 355(a)(1)(B). The regulations under section 355 list several factors that may provide evidence of device. First, a pro rata distribution "presents the greatest *85 potential for the avoidance of the dividend provisions of the Code", and supplies evidence of device. Sec. 1.355-2(d)(2)(ii), Income Tax Regs. Here, however, petitioners did not receive a pro rata distribution because only petitioners received stock in the distribution. Second, a sale or exchange of stock after the distribution presents evidence of device. Sec. 1.355-2(d)(2)(iii), Income Tax Regs. Here petitioners did not sell or exchange the Boy stock after the distribution. Third, the nature and use of the assets of the corporations may be evidence of device. Sec. 1.355-2(d)(2)(iv), Income Tax Regs. Here the corporations retained assets for use in their respective restaurant businesses. The regulations also list factors providing evidence of nondevice. The only factor that is relevant here provides that a corporate business purpose is evidence of nondevice. Sec. 1.355-2(d)(3)(ii), Income Tax Regs. As indicated above, petitioners have shown a corporate business purpose for this distribution. Finally, transfers between the corporations to adjust their respective values prior to the split-off do not, by themselves, prevent the application of section 355. See Badanes v. Commissioner, supra; *86 see also Rev. Rul. 83-114, 1983-2 C.B. 66; Rev. Rul. 56-655, 1956-2 C.B. 214. The Addendum required Angus to assume $ 300,000 of Boy's debt simply as an adjustment to the values of the two corporations. Therefore, petitioners have satisfied the requirement that the distribution not be used principally as a device to distribute earnings and profits. Active Business
The distributing corporation and the controlled corporation must be engaged in the active conduct of a trade or business. Sec. 355(a)(1)(C). The underlying requirements are laid out in section 355(b), and expanded upon in the regulations. First of all, both the distributing and the controlled corporations must be engaged in the active conduct of a trade or business immediately after the distribution. Sec. 355(b)(1)(A), (2)(A). Angus and Boy were so engaged immediately after the distribution. Second, the trade or business must have been actively conducted throughout the 5-year period ending on the date of distribution. Sec. 355(b)(2)(B). According to the regulations, however, if a corporation engaged in the active conduct *87 of one trade or business during that five-year period purchased, created, or otherwise acquired another trade or business in the same line of business, then the acquisition of that other business is ordinarily treated as an expansion of the original business, all of which is treated as having been actively conducted during that five-year period * * *
Sec. 1.355-3(b)(3)(ii), Income Tax Regs. In this case Boy was in the same line of business as Angus, and represented an expansion of the business of Angus. Petitioners have satisfied the requirement in section 355(b)(2)(B). Third, the business must not have been acquired during the 5-year period in a transaction in which gain or loss was recognized. Sec. 355(b)(2)(C), (D)(ii). [3] Therefore, not every acquisition of a business, even one in the same line of business, will qualify for nonrecognition treatment in a subsequent distribution of stock. The record in this case does not show whether Boy purchased the assets of the restaurant business in Pensacola Beach (i.e., Surfside Marina, Inc.) in a transaction in which gain or loss was recognized. While this could be viewed as a failure of proof by petitioners, we find that respondent *88 has conceded this question. During the course of this litigation, petitioners took the approach that respondent's primary, or only, argument against nonrecognition related to the 5-year active business requirement. At trial, petitioners presented testimony from several witnesses that Angus and Boy were engaged in the same line of business. On brief, petitioners discussed the 5-year active business requirement in more detail than any other requirement, relying, in particular, on an example in the regulations that presents facts similar to this case. [4] Respondent's concession was made in response to the one issue that petitioners have argued most fully and consistently; i.e., that petitioners have satisfied the 5-year active business requirement. *89 Continuity of Interest
There must be continuity of interest by the shareholders in the corporations involved in the split-off. Sec. 1.355-2(c), Income Tax Regs. Here petitioners and the Bithoses owned Angus and Angus owned Boy before the transaction. Afterward, petitioners owned Boy and the Bithoses owned Angus. Petitioners and the Bithoses owned all of the businesses before the transaction, and the same persons owned all of the businesses after the transaction. See sec. 1.355-2(c)(2), Example (1), Income Tax Regs. Petitioners have satisfied the continuity of interest requirement. Conclusion
Petitioners have satisfied all of the requirements for nonrecognition treatment. Therefore, they did not recognize gain on the receipt of the Boy stock. Issue 2. Recognition of Gain on Disposition of Real Properties
Pursuant to the Addendum, petitioners received property besides the stock in the transaction, but section 355 does not apply to this property. [5]
*90 On the transfer of petitioners' 50-percent interests in the Angus Property and the Moreno Street property, petitioners' amount realized was $ 235,170, and their adjusted basis for the two properties totaled $ 71,492. Therefore, petitioners realized total gain of $ 163,678, to be taken into account under the installment method of section 453. On the transfer of Maria's Property, petitioners' amount realized was $ 65,000, and their adjusted basis was $ 31,474. Therefore, petitioners realized gain of $ 33,526, all of which must be recognized. In each case, the gain was gain from the disposition of depreciable realty pursuant to section 1250. Respondent argues on brief that petitioners improperly took deductions on Schedule E for the full amount of certain expenses relating to Maria's Property. This is a new matter with respect to which respondent has the burden of proof. Rule 142(a). However, petitioners have argued, and we have found, that as of June 6, 1989, they still owned only a 50-percent interest in Maria's Property, while Boy owned the other 50 percent. Consequently, respondent has met her burden with respect to this new matter. Petitioners are only entitled to deductions *91 on Schedule E that relate to ownership of their 50-percent interest in Maria's Property. In addition, the basis of $ 31,474 for Maria's Property includes taxes on the property, so petitioners may not deduct taxes on Schedule E. To reflect the foregoing and concessions, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Current secs. 1.355-1 to -4, Income Tax Regs., apply to transactions occurring after Feb. 6, 1989. Sec. 1.355-1(a), Income Tax Regs.↩ Even though the Addendum was signed on Jan. 6, 1989, the transaction in this case occurred on June 6, 1989, so the current regulations apply. Moreover, the transfer of a portion of the $ 65,000 cash payment before June 6, 1989, and possibly on or before Feb. 6, 1989, does not prevent the application of the current regulations to this case.
3. The regulations state that if the basis of assets acquired in the transaction was not calculated by looking to the transferor's basis, then the transaction fails to satisfy section 355(b)(2). Sec. 1.355-3(b)(4)(i), Income Tax Regs.↩
4. The example that petitioners rely on states: Example (8). For the past six years, corporation X has owned and operated hardware stores in several states. Two years ago, X purchased all of the assets of a hardware store in State M, where X had not previously conducted business. X transfers the State M store and related business assets to new subsidiary Y and distributes the stock of Y to X's shareholders. After the distribution, the State M store has its own manager and is operated independently of the other stores. X and Y both satisfy the requirements of section 355(b). See paragraph (b)(3)(i) and (ii) of this section.
Sec. 1.355-3(c), Example (8), Income Tax Regs. The examples from which this example comes are designed to illustrate sec. 355(b)(2)(A) and (B), but not sec. 355(b)(2)(C) and (D). See sec. 1.355-3(c), Income Tax Regs. On the other hand, this example does say that X and Y satisfy sec. 355(b), not simply sec. 355(b)(2)(A) and (B). If X and Y satisfy sec. 355(b), they must necessarily satisfy sec. 355(b)(2)(C)↩. Similar to this case, the facts of this example do not reveal the way in which the transaction to purchase the hardware store in State M was accomplished without the recognition of gain or loss.
5. This property (namely, the note for $ 135,000 and the assumption of liability of $ 100,170) is not "other property" within the meaning of sec. 356. Sec. 356 applies to property in addition to stock (also known as boot) transferred by the distributing corporation to the shareholder. See sec. 356(a)(1)(B)↩. Here the property was transferred by the Bithoses in exchange for the Angus Property and the Moreno Street Property.