T.C. Memo. 1995-472


UNITED STATES TAX COURT


MICHAEL K. JONES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9295-94.            Filed October 3, 1995.


<u>Patrick J. O'Brien</u>, for petitioner.

<u>Aretha Jones</u>, for respondent.


MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial

Judge Carleton D. Powell pursuant to the provisions of section

7443A(b)(4) and Rules 180, 181, and 183.[1]  The Court agrees with

_____

[1]  Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the year in issue.  Rule
(continued...)

and adopts the opinion of the Special Trial Judge that is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, Special Trial Judge:  Respondent determined a deficiency in petitioner's 1990 Federal income tax in the amount of $8,677 and additions to tax pursuant to sections 6651(a) and 6654(a) in the amounts of $1,786 and $458.78, respectively. Petitioner resided in Ridgefield, Connecticut, at the time the petition was filed.

The issues are (1) whether petitioner had unreported income from The Brownson Institute, (2) whether petitioner had itemized deductions exceeding the standard deduction amount, and (3) whether the additions to tax are applicable.

The facts may be summarized as follows.  Prior to 1989 petitioner had been a seminary student in Philadelphia, Pennsylvania.  In 1989 petitioner left the seminary and moved to Washington, D.C., to seek employment as a professional writer. By the end of 1989, petitioner had accepted a job as a speech writer with the U.S. Department of Energy (DOE).  This appointment was subject to obtaining a security clearance; however, petitioner began working as an employee in either late 1989 or very early in 1990, and the security clearance was obtained in February or March of 1990.  During this time

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure.

petitioner continued to interview with other prospective employers.

Dinesh D'Souza (D'Souza) is an officer with The Brownson Institute (the Institute) and a long-time friend of petitioner. At times during their friendship, D'Souza lent funds to petitioner that he had repaid. D'Souza also served as a guarantor on a loan petitioner received from a financial institution. At the time of the trial petitioner was repaying that loan.

The Institute publishes "Crisis", a magazine dealing with religious issues; however, the Institute does not engage in any other type of publishing activity. Petitioner had previously submitted, and been paid for, articles published in "Crisis". D'Souza also was aware of petitioner's aspiration to write a book, tentatively titled The Questioning Catholic, while pursuing his seminary studies.

In 1990 D'Souza agreed to help petitioner finance the continuation of his theology studies. Rather than directly lending money to petitioner, D'Souza had the Institute transfer $10,000 to petitioner from its account. There were no notes or other documents executed to show that a bona fide debt was created between petitioner and the Institute, no security was given, and no interest was required from petitioner. D'Souza did not discuss the transfer with other officers of the Institute. Apparently D'Souza expected repayment to come from royalties that

might be generated by The Questioning Catholic. Petitioner returned to the seminary in September of 1990, and completed his studies. As of the date of trial petitioner has not written the book, nor has he repaid the loan.

Respondent received a Form W-2 from DOE showing wage income of $30,907 and a Form 1099-MISC from the Institute reflecting the payment of $10,000 to petitioner. Respondent also received a Form 1099-INT from Perpetual Savings Bank indicating an interest payment in the amount of $64 and a Form 1099-G from the Commonwealth of Virginia indicating payment of a State tax refund in the amount of $279. Petitioner does not recall receiving the Form 1099-MISC from the Institute.

While petitioner filed returns in the past, he does not recall whether he prepared or filed a return for 1990. Respondent did not receive a return for petitioner's 1990 taxable year, and prepared a substitute return for him. Respondent determined that the wages, interest, and State tax refund were includable in gross income. Respondent also determined that the $10,000 payment received from the Institute was includable in gross income. In determining petitioner's tax liability, respondent allowed one personal exemption and the standard deduction of a single filer in the amount of $3,250. Respondent also determined that petitioner was liable for the tax on self-employment income on the $10,000 payment received from the Institute.

Petitioner has the burden of proof on each of the issues in dispute. Rule 142(a). Petitioner's records have been lost; this, however, does not relieve him of his burden. Cady v. Commissioner, T.C. Memo. 1990-260. Petitioner concedes that he received the wages from DOE. Petitioner did not offer any evidence with regard to the interest income or the State tax refund, and we sustain respondent on these issues. Furthermore, while petitioner testified that he incurred some job search expenses and that he made some charitable contributions, he did not show that the deductions for these expenses exceeded the standard deduction amount.[2]

Regarding the funds received from the Institute, it is well established that funds received as a loan do not constitute taxable income to the recipient. Woodsam Associates, Inc. v. Commissioner, 198 F.2d 357 (2d Cir. 1952), affg. 16 T.C. 649 (1951). For tax purposes, a bona fide debt is one arising from a "debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs. Further, under section 102(a), gross income does not include amounts received "'out of

---

[2] Petitioner testified that he made charitable contributions of approximately $30 each week, or $1,560 for the year. He also testified that he had job search expenses of approximately $100 each month for the first 2 or 3 months of 1990. Petitioner also contends that his monthly living expenses of $850 were deductible as job search expenses; however, he was employed from at least very early in 1990, and these expenses were nondeductible living expenses. Sec. 262.

affection, respect, admiration, charity or like impulses'", or from a "'detached and disinterested generosity'," as a gift. Commissioner v. Duberstein, 363 U.S. 278, 285 (1960) (quoting Robertson v. United States, 343 U.S. 711, 714 (1952) and Commissioner v. Lo Bue, 351 U.S. 243, 246 (1956)); Osborne v. Commissioner, T.C. Memo. 1995-71.

We agree with respondent that no bona fide debt existed between petitioner and the Institute. There was no agreement of any type between them regarding repayment of the funds, petitioner offered no security, and no interest was required or paid. However, this does not dispose of the issue. As the testimony made clear, the Institute served merely as a conduit to effectuate a transfer of funds from D'Souza to petitioner. The Institute provided the funds solely upon D'Souza's request; it did not receive any services by petitioner, and it did not acquire any publishing or royalty rights held by petitioner. It is also clear that D'Souza intended the transfer to be either a gift or a loan to petitioner. Under either scenario, however, the $10,000 is not taxable income to petitioner, and we need not explore the issue further. It also follows that petitioner would not be liable for any tax on self-employment income.

Respondent determined that petitioner was liable for an addition to tax under section 6651(a) for failure to file a return. Section 6651(a) provides for an addition to tax in the case of a failure to file a return unless it is established that

the failure was "due to reasonable cause and not due to willful neglect".  Petitioner has not established that he filed a return or that the failure to file was due to reasonable cause. Respondent's records indicate that petitioner did not file a return for the year at issue.  Petitioner acknowledges that some additional tax in excess of withholding would have been due, and he has not shown that any additional amount was paid.  Indeed, petitioner cannot recall preparing or mailing the return. Petitioner had timely filed his Federal income tax returns for other years and knew that he was required to file a return.  It may be that petitioner was at the seminary during this time, and his mail service may not have been reliable.  Petitioner may not have actually received his Forms W-2 and 1099; however, the lack of records does not relieve a taxpayer from the obligation to file a return.  Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1343 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974).  We sustain respondent's determination on this issue.

Respondent also determined that petitioner was liable for an addition to tax pursuant to section 6654(a) for failure to pay estimated tax.  Under section 6654(d)(1)(B), individuals are generally required to pay in four equal installments during the year a "required annual payment" that equals the lesser of (i) 90 percent of the tax shown or required to be shown on the return, or (ii) 100 percent of the tax shown on the individual's return

for the previous year.  Where an individual is subject to wage withholding, the total amount of tax withheld during the year is deemed to have been paid in equal amounts on the due date of each installment.  Sec. 6654(g).  Petitioner reported and paid tax in the amount of $671 for 1989, and DOE withheld Federal income tax in the amount of $1,534 during the 1990 year.  Thus, petitioner made the "required annual payment" in the installments mandated by section 6654; accordingly, there is no underpayment of estimated taxes for the year at issue.

Based on the foregoing,

Decision will be entered

under Rule 155.