[865 NYS2d 1]

GOLDEN GATE YACHT CLUB, Respondent, v SOCIÉTÉ NAUTIQUE DE GENÈVE, Appellant, and CLUB NÁUTICO ESPAÑOL DE VELA, Intervenor-Defendant.

First Department, July 29, 2008

## APPEARANCES OF COUNSEL

*Simpson Thacher & Bartlett LLP*, New York City (*Barry R. Ostrager, Jonathan K. Youngwood, George S. Wang* and *Laura D. Murphy* of counsel), for appellant.

*Latham & Watkins LLP*, New York City (*James V. Kearney* and *Gina M. Petrocelli* of counsel), for respondent.

## OPINION OF THE COURT

DeGrasse, J.

Defendant Société Nautique de Genève (SNG) appeals from an order that, insofar as is relevant to this appeal, declared plaintiff Golden Gate Yacht Club (GGYC) the Challenger of Record for the upcoming America's Cup race and invalidated the challenge by which such status was claimed by intervenor-defendant Club Náutico Español de Vela (CNEV).

The America's Cup is a silver cup trophy that constitutes the corpus of a charitable trust created in the 19th century under New York law (*see Mercury Bay Boating Club v San Diego Yacht Club*, 76 NY2d 256, 260 [1990]). The Cup was first won in 1851 by the yacht *America* in a race around the Isle of Wight. George L. Schuyler, the sole survivor of the Cup's six owners, donated the trophy to the New York Yacht Club by Deed of Gift dated October 24, 1887 on condition that it be preserved "as a perpetual Challenge Cup for friendly competition between foreign countries." The America's Cup competition has become one of the world's premier international sporting events. Under the Deed, the holder of the Cup becomes its sole trustee, to be succeeded only by a successful challenger in a race at sea. The Cup has been defended 32 times since the inception of the competition. SNG, the current trustee or Defender, won the Cup on March 2, 2003 in the 31st America's Cup match and defended its title on July 3, 2007 in the 32nd America's Cup match. Pursuant to the Deed of Gift:

> "Any organized Yacht Club of a foreign country, incorporated, patented, or licensed by the legislature, admiralty, or other executive department, having for its annual regatta an ocean water course on the sea, or on an arm of the sea, or one which

combines both, shall always be entitled to the right of sailing a match for this Cup, with a yacht or vessel propelled by sails only and constructed in the country to which the Challenging Club belongs, against any one yacht or vessel constructed in the country of the Club holding the Cup."

The Challenger of Record is the first club to issue a challenge with respect to a given America's Cup. Under the Deed, the Challenger of Record must meet the annual regatta requirement, which will be discussed hereinafter, and must be (1) organized as a yacht club, (2) foreign, and (3) incorporated or licensed by its government. The Deed requires the Challenger of Record to give 10 months' written notice of the days for the proposed races, with the proviso that no race shall be held between November 1 and May 1 in the Northern Hemisphere or between May 1 and November 1 in the Southern Hemisphere. The 10 months' notice must detail the name, ownership, rig, and specified dimensions of the challenging vessel. The Deed precludes the Defender from entertaining any other purported challenge of record while the challenge of a qualified Challenger of Record is pending. Once a challenge is accepted, the Defender and the Challenger of Record may, under the Deed, set the conditions of the competition as follows:

"The Club challenging for the Cup and the Club holding the same may, by mutual consent, make any arrangement satisfactory to both as to the dates, courses, number of trials, rules and sailing regulations, and any and all other conditions of the match, in which case also the ten months' notice may be waived."

Through this "mutual consent" provision, every America's Cup match since 1970, save one, has been an event in which challengers from different countries competed in an elimination series for the opportunity to have a one-on-one race with the Defender (see *Mercury Bay Boating Club* at 262). The Deed provides for a three-race match between the Defender and the Challenger of Record in the event of the parties' inability to agree upon the terms of a match. In such a case, the Defender chooses the courses of the races as well as the applicable race rules and sailing regulations. The winner of two of the three races is entitled to the Cup. In the last 38 years, only the 27th America's Cup match, held in 1988, was conducted as a two-boat race because the parties could not agree on terms. The 27th Cup match was also the subject of the Court of Appeals'

decision in *Mercury Bay Boating Club v San Diego Yacht Club* (76 NY2d 256 [1990], *supra*).

On July 3, 2007, immediately after its victory in the 32nd Cup match, SNG accepted CNEV's formal challenge for the 33rd Cup match. By way of background, CNEV was incorporated as a sporting association under the laws of the Valencia region of Spain on June 19, 2007, by Real Federación Española de Vela (RFEV).[1] Established under Spanish law in 1990, RFEV is not a yacht club but a federation of sports clubs and individuals who promote the sport of sailing. Nevertheless, it competed in the challenger elimination series for the 32nd America's Cup. CNEV was incorporated for the express purpose of challenging for the 33rd Cup and avoiding lingering controversy regarding the capacity of a sailing federation, such as RFEV, to become a challenger and potential trustee under the Deed of Gift. Upon acceptance of CNEV's challenge, and in keeping with the Deed's "mutual consent" provision, SNG and CNEV entered into a protocol setting out the terms of the 33rd America's Cup match. When it filed its challenge, CNEV had not held an annual regatta. By letter to SNG dated July 11, 2007, GGYC, the Challenger of Record for the 32nd America's Cup, disputed CNEV's challenge as follows:

> "We respectfully submit that the challenge is invalid. Among other deficiencies, it is not from a *bona fide* yacht club, but from an entity organized in the form of a yacht club only a few days before the challenge was accepted by SNG and which has never had an annual regatta on an open water course on the sea or an arm of the sea as required by the Deed of Gift. It is also apparent that this 'Challenger of Record' has not performed any of the duties of the Challenger as contemplated by the Deed of Gift, but has simply delegated to the Defender the authority to determine all of the 'conditions' governing the match. This undermines the fundamental purpose of the Deed of Gift to preserve this competition as a Challenge Cup."[2]

GGYC proffered its own purported challenge with the letter and

---

1.  CNEV was duly registered with the regional Registry of Sports Organizations (Registro de Entidades Deportivas de la Comunitat Valenciana) on June 28, 2007.

2.  CNEV subsequently held its regatta on November 24 and 25, 2007 in Valencia, Spain.

demanded recognition by SNG as the Challenger of Record for the 33rd America's Cup match. By its Notice of Challenge, GGYC proposed July 4, 2008 as the date of the first race and July 6 and 8, 2008 as the dates for the second and, if necessary, third races.

On July 20, 2007, invoking the arbitration provision of the protocol it entered into with CNEV, SNG applied to the 33rd America's Cup Arbitration Panel for a determination regarding CNEV's challenge. SNG's arbitration petition reads as follows:

> "There has been issued raised [*sic*] by prospective competitors in the 33rd America's Cup, including the Golden Gate Yacht Club, as to the validity of the challenge of Club Nautico Espanol de Vela. SNG as Trustee of the America's Cup makes an application to the Panel for a declaration that the challenge received from Club Nautico Espanol de Vela on 3rd July 2007 and accepted by SNG on the same date, is a valid challenge under the terms of the Deed of Gift of 24th October 1887, and that SNG is obliged to meet that challenge under the terms of the Deed of Gift."

July 20, 2007 is also the date on which GGYC commenced this action alleging that SNG breached the Deed of Gift and its fiduciary duty as trustee by accepting CNEV's challenge. GGYC contended that CNEV's challenge is invalid under the Deed because it was made when CNEV (1) was not an organized yacht club and (2) had not conducted an annual regatta. SNG moved and GGYC cross-moved for summary judgment with respect to the entire complaint. The motion court denied SNG's motion and granted GGYC's cross motion, vacating CNEV's challenge on the ground that CNEV had failed to meet the Deed's annual regatta requirement. Having made that determination, the motion court found it unnecessary to reach the question whether CNEV was an organized yacht club. SNG subsequently moved for leave to renew and reargue, asserting that GGYC's challenge is deficient, based upon its description of its vessel. The court denied that motion (2008 NY Slip Op 30782[U]). An order incorporating the motion court's determination was entered on May 13, 2008 (2008 NY Slip Op 32296[U]). Noting that SNG's 10-month preparation period had been interrupted by this litigation, the court directed that the first challenge match race be held 10 months from the date of service of a copy of its order with notice of entry and that the second be held two business days thereafter and the third, if necessary, two business days af-

ter that. The court further directed that the 33rd America's Cup match be held in Valencia, Spain, the venue designated upon SNG's acceptance of CNEV's challenge, or at a different location upon notice prescribed by the order.

This appeal turns on the meaning of the words "having for its annual regatta" as used in the Deed of Gift. In making its determination, the motion court found that the phrase is "plainly understood to mean that it is an on-going activity; the activity has taken place and is continuing" (18 Misc 3d 1111[A], 2007 NY Slip Op 52496[U], *7). The court further found that the phrase "implies that the organization has had one or more regattas in the past, and will continue to have them in the future" (id.). Accordingly, the court reasoned that CNEV was not a qualified Challenger of Record because it had not held an annual regatta as of the date of its challenge. The Deed of Gift, a trust instrument, "is to be construed as written and the settlor's intention determined solely from the unambiguous language of the instrument itself" (*Mercury Bay Boating Club*, 76 NY2d at 267). As SNG would have it, the annual regatta requirement can be satisfied where the yacht club "intends to hold an annual regatta and does so prior to the date of its proposed match." GGYC disputes SNG's construction, arguing that " '[h]aving' as commonly used in the law does not mean 'not having now.' It means 'possess.' And, in this context, it means, 'possess' an annual regatta." GGYC's argument is untenable because, as a matter of standard English usage, the noun "regatta" cannot be the proper object of the verb "possess."

The record includes an excerpt from An English Grammar For the Use of High School, Academy, and College Classes, by W. M. Baskervill and J. W. Sewell (1896). According to this treatise, participles, such as "having," are verbals that "express action in a general way, without limiting the action to any time, or asserting it of any subject." 'Participles "cannot be divided into tenses (present, past, etc.), because they have no tense of their own, but derive their tense from the verb on which they depend." An example given in the treatise is "fulfilling," which depends on the past-tense verb, "walked," in the following: "He walked conscientiously through the services of the day, fulfilling every section the minutest, etc." A further example is "dancing," which depends on a present-tense verb in the following verse:

"Now the bright morning star, day's harbinger,

Comes dancing from the East."

In accordance with the foregoing, "having for its annual regatta" can only be interpreted through strained English usage. If explicable at all, the phrase is subject to conflicting interpretations. We therefore hold that the Deed of Gift's annual regatta requirement is ambiguous. GGYC argued below that the participle "having," in the Deed, derives its tense from the words "shall always be entitled." "Shall," however, is a word used to form the future tense (Lutz and Stevenson, The Writer's Digest Grammar Desk Reference § 1C, at 16-17). Accordingly, GGYC's argument only confirms the ambiguity of the annual regatta requirement.

A court may resort to extrinsic evidence to construe an ambiguous provision of a trust instrument (*see Mercury Bay Boating Club*, 76 NY2d at 267). In this instance, the Cup's recent history is a source of relevant extrinsic evidence. SNG challenged for the 31st America's Cup by letter to the Royal New Zealand Yacht Squadron (RNZYS), the then trustee, on August 18, 2000. SNG, a Swiss yacht club, is situated on Lake Geneva and, as of the date of its challenge, had never held a regatta on an ocean water course, as required by the Deed. As a precautionary measure, SNG and RNZYS applied to the 31st America's Cup Arbitration Panel (ACAP 31) for a ruling regarding the validity of SNG's challenge and "seeking interpretations of the Deed of Gift relating to the criteria for future challengers by yacht clubs not located on the sea or an arm of the sea." ACAP 31 received submissions from three other yacht clubs, including the New York Yacht Club, none of which disputed the validity of SNG's challenge. ACAP 31 resolved the issue by determining that the Deed of Gift has no provision requiring the annual regatta to have been held prior to the lodging of a challenge. GGYC attempts to dismiss ACAP 31's decision as "unremarkable" because SNG was not the Challenger of Record for the 31st Cup but merely a so-called "Mutual Consent Challenger." However, the Deed itself makes no such distinction with respect to the annual regatta requirement. Adoption of the distinction would mean that a yacht club, such as SNG in 2000, could win the Cup, serve as its trustee, and defend it, but lack the capacity to be a Challenger of Record. Nothing in the Deed of Gift calls for such an incongruous result.

As noted above, the motion court did not address GGYC's argument that CNEV is not an "organized Yacht Club," a status required but not defined by the Deed. An entity is "organized"

if it has taken all steps "necessary to endow [itself] with the capacity to transact the legitimate business for which it was created" (*Matter of Corporation of Yaddo,* 216 App Div 1, 5 [1926]). According to its certificate of incorporation, CNEV was incorporated as a sports entity whose purpose is to support "sports activities practiced on the sea, and especially to promote the sport of sailing by organizing national and international regattas held in national territory." It has an address, bylaws and a board of directors. In addition, as indicated it is registered with the Valencian Registry of Sports Organizations. Based upon the foregoing attributes, we hold that CNEV was organized as a yacht club at the time of its challenge. GGYC cites no authority to support its argument that a yacht club must have vessels to be organized. Therefore, CNEV met the Deed of Gift's organizational and annual regatta requirements. In light of the foregoing, we need not reach the issue whether GGYC's purported challenge was deficient.

Accordingly, the orders of the Supreme Court, New York County (Herman Cahn, J.), entered March 18, 2008 and May 13, 2008, which, inter alia, declared CNEV's challenge invalid and GGYC the Challenger of Record under the Deed of Gift, should be reversed, on the law, with costs, CNEV declared the Challenger of Record, and, in keeping with the Deed of Gift's requirement that the Defender be given at least 10 months' written notice to prepare for the challenge, the 10-month notice period should be tolled until service of a copy of this order.

NARDELLI, J. (dissenting). Because I find, inter alia, that the motion court properly concluded that the relevant wording of the Deed of Gift is unambiguous and, therefore, that the challenge of Club Náutico Español de Vela is invalid, I respectfully dissent.

The America's Cup[1] is a silver trophy which is the corpus of a charitable trust, having derived its name from the schooner *America,* which won a yacht race around the Isle of Wight against numerous British challengers in 1851. The six owners of *America* and the Cup donated it to the New York Yacht Club in 1857, but it was twice returned to George Schuyler, the sole surviving Cup donor, when questions arose regarding the terms

---

1. The following historical background of the America's Cup has been gleaned from the decision of the New York State Court of Appeals in *Mercury Bay Boating Club v San Diego Yacht Club* (76 NY2d 256 [1990]), as well as from those parts of the parties' submissions which are undisputed.

of the trust under which the Cup was to be held. In 1887, Schuyler again donated the Cup to the New York Yacht Club pursuant to the current Deed of Gift (Deed), dated October 24, 1887,[2] "upon the conditions that [the Cup] shall be preserved as a perpetual Challenge Cup for friendly competition between foreign countries."

The Deed provides that the holder of the Cup is its sole trustee until such time as a successful challenge is mounted by a qualified challenger.[3] The Deed specifically delineates what criteria must be met for a yacht club to be considered an eligible challenger, and therefore entitled to challenge for the Cup, and it is that provision, which follows, that is at the core of the current controversy:

> "*Any organized Yacht Club of a foreign country, incorporated, patented, or licensed by the legislature, admiralty, or other executive department, having for its annual regatta an ocean water course on the sea,* or on an arm of the sea, or one which combines both, shall always be entitled to the right of sailing a match for this Cup, with a yacht or vessel propelled by sails only and constructed in the country to which the Challenging Club belongs, against any one yacht or vessel constructed in the country of the Club holding the Cup" (emphasis added).

The first club that issues a challenge provides the defender with 10 months' written notice (Notice of Challenge), names the days for the proposed race in accordance with the Deed restrictions,[4] and provides certain technical information about the challenging vessel, becomes the Challenger of Record. As noted by the Court of Appeals in *Mercury Bay* (76 NY2d at 261), there is nothing in the Deed which limits the design of the defending club's vessel other than the length on water-line limits applicable to all competing vessels. Further, the vessels are not limited to monohulls, and there is no requirement that the vessel defending the Cup have the same number of hulls as the challenger, or even that the competing vessels be substantially similar.

---

2. The Deed was amended by two orders of the New York State Supreme Court, dated December 17, 1956 and April 5, 1985.

3. The Deed also provides a mechanism for the transfer of the Cup "[s]hould the Club holding the Cup be for any cause dissolved."

4. Pursuant to the terms of the Deed, races must be scheduled between May 1 and November 1 if they are to be held in the Northern Hemisphere, and between November 1 and May 1 in the Southern Hemisphere.

The Deed gives the defending club and the Challenger of Record the freedom to promulgate all of the particular details of the races, and states that the parties "may, by mutual consent, make any arrangement satisfactory to both as to the dates, courses, number of trials, rules and sailing regulations, and any and all other conditions of the match, in which case also the ten months' notice may be waived." Historically, the defender and the Challenger of Record have, pursuant to the foregoing provision, come to terms and issued an agreed-upon protocol which, inter alia, allows for other yacht clubs, as "Mutual Consent Challengers," to participate in an elimination regatta for the right to race the defender. In the event the parties cannot mutually agree upon the terms of a match,[5] "then three races shall be sailed, and the winner of two of such races shall be entitled to the Cup." The Deed provides the terms and conditions for such a one-on-one match.

Finally, the Deed provides that "when a challenge from a Club fulfilling all the conditions required by this instrument has been received, no other challenge can be considered until the pending event has been decided."

Defendant Société Nautique de Genève (SNG) is a Swiss yacht club and the Cup's current defending club and trustee, having, through its Team Alinghi, initially won the 31st America's Cup on March 2, 2003, and thereafter successfully defended its title in the 32nd America's Cup match on July 3, 2007. Plaintiff Golden Gate Yacht Club (GGYC) was the Challenger of Record for the 32nd America's Cup in which 12 yacht clubs raced, although it was eliminated in the challenger series and did not compete in the final match.

Initially, Real Federación Española de Vela (RFEV), a Spanish sailing federation, contemplated becoming the Challenger of Record for the 33rd America's Cup, but was advised by its lawyers that because it was a federation of yacht clubs, and not a yacht club itself, its status of Challenger of Record could be disputed. Accordingly, in an attempt to sidestep controversy, RFEV incorporated defendant Club Náutico Español de Vela

---

**5.** Since 1970, a multi-challenger match race has been conducted every three to four years, with the defending club and the Challenger of Record agreeing on a protocol, except for the 27th America's Cup match, held in 1988, which resulted in a two-boat match and which eventually led to the Court of Appeals' decision in *Mercury Bay*.

(CNEV) on June 19, 2007[6] as a private Spanish sports club, with unlimited duration, for the purpose of promoting sailing practices through the organization of national and international regattas and to organize at least one regatta per year in the open sea.

On July 3, 2007, CNEV tendered a formal Notice of Challenge for the 33rd America's Cup, asserting that it was a valid challenger under the terms of the Deed, in that it was a foreign yacht club organized under Spanish law and that it agreed to hold two annual regattas prior to the racing of the 33rd America's Cup match. SNG accepted CNEV as the Challenger of Record on the same day, and on July 5, 2007, the parties publicly released "The Protocol Governing the Thirty-Third America's Cup" (Protocol).

While a number of international yacht clubs signed on to the Protocol shortly after its publication,[7] an equal or greater number of clubs signed a letter which not only condemned the Protocol as "the worst text in the history of the America's Cup and more fundamentally [because] it lacks precisely the mutual consent items which are required," but also questioned the legitimacy of the "newly created and purely instrumental entity" CNEV "to advance a Challenge under the provisions of the Deed of Gift." The letter further propounds that the Protocol so heavily favors the Defender by shifting the balance of the competition in its favor that it "jeopardizes the . . . survival of the event."

GGYC, on July 11, 2007, issued its own formal Notice of Challenge, noting that it:

> "(a) is incorporated in the United States of America, in the State of California;
>
> "(b) maintains a membership of more than 200 members;
>
> "(c) operates as a yacht club and has objectives consistent with the furtherance of yachting activities;
>
> "(d) is a member of our national sailing authority, US SAILING; and

---

**6.** CNEV was registered with the Registro de Entidades Deportivas de la Comunitat Valenciana (Registry of Sports Organizations of the Valencian Community) on June 28, 2007.

**7.** SNG maintains that additional qualified yacht clubs have signed on to the Protocol since the summary judgment motions were filed in Supreme Court.

"(e) has an annual regatta, the Sea Weed Soup Perpetual Trophy that, among other GGYC regattas, is and has been held annually on an arm of the sea, namely San Francisco Bay."

Accordingly, GGYC contended that it is an organized yacht club that fulfills all of the conditions of a Challenger of Record under the terms of the Deed.

SNG, by letter dated July 23, 2007, formally rejected GGYC's challenge, stating that it had already received a valid challenge from CNEV and that the Deed barred consideration of GGYC's challenge until the pending challenge of CNEV has been decided. In the interim, on July 20, 2007, SNG commenced an arbitration proceeding pursuant to the arbitration provisions of the Protocol,[8] seeking a ruling as to the validity of CNEV's challenge. The arbitration panel invited GGYC's participation in the proceedings, but GGYC, by letter dated July 27, 2007, declined to do so, poignantly stating, inter alia, that:

"It is subterfuge to have SNG and CNEV's hand picked arbitrators, replaceable at . . . their whim, sitting in a forum and under rules wholly controlled by SNG and CNEV, and judging an issue that the parties to the arbitration do not dispute. The disgrace and shame brought upon the America's Cup by this charade threatens to inflict a crippling blow to the sport. This arbitration, if it chooses to proceed, will not and cannot have any involvement from GGYC, and will be viewed with the same disdain by the public and sailing community as CNEV's sham regatta."

On September 10, 2007 the panel ruled that CNEV qualified as a valid Challenger of Record and that the Deed did not require that an annual regatta have been held prior to the issuance or acceptance of a newly formed yacht club's notice of challenge.

GGYC, on the same date that SNG had initiated the arbitration proceeding, commenced the within action against SNG by

---

**8.** Part D of the Protocol, entitled "DISPUTE RESOLUTION AND ENFORCEMENT," provides, in relevant part, that "[a]ny dispute, protest or claim arising out of or in relation to this Protocol and/or the Applicable Documents . . . shall be resolved by arbitration in accordance with the provisions of this Protocol." The Protocol at that time further allowed SNG and CNEV to privately select the arbitration panel members and to "dismiss and replace them . . . at their discretion at any time."

the service of a summons and verified complaint, which interposed two causes of action. The first cause of action sounds in breach of fiduciary duty and asserts that SNG, as trustee of the Cup, has a duty to enforce the terms of the Deed and that it breached that duty and engaged in self-dealing when it accepted CNEV's challenge, and when it entered into the Protocol without engaging in the process set forth in the Deed's "mutual consent" clause. The second cause of action, which alleges breach of the Deed, states that CNEV's Notice of Challenge and challenges were invalid in that they failed to conform to the terms of the Deed. The complaint seeks[9] a declaration that the purported challenge and the Protocol are void; a declaration that GGYC's challenge is valid; judgment enjoining SNG from promulgating rules and regulations pursuant to the Protocol and directing SNG to reject CNEV's challenge; and judgment enjoining SNG to accept GGYC's Notice of Challenge and to implement the terms of the Deed by participating with GGYC in the establishment of a protocol through a consensual process or, failing that, to proceed with a match under the express rules of the Deed.

SNG subsequently moved for summary judgment dismissing the complaint on the ground that CNEV satisfied all of the requirements of the Deed. GGYC opposed the motion and cross-moved for summary judgment in its favor, arguing that CNEV is not an "organized" yacht club and has not held an annual regatta[10] as required by the terms of the Deed. GGYC contends that CNEV is controlled by RFEV, and that it is a shell entity that has refused to identify its members, has no vessels, no telephone number other than that of the base facility of its racing team, and no Web site.

The motion court, in a memorandum decision dated November 27, 2007, dismissed GGYC's cause of action for breach of fiduciary duty, but granted it summary judgment on its cause of action for breach of the terms of the Deed (18 Misc 3d 1111[A], 2007 NY Slip Op 52496[U]). The court found that the wording in the Deed, "having for its annual regatta," requires that the challenging yacht club must have had one or more regattas in

---

**9.** CNEV subsequently sought, and was permitted, to intervene in this action. However, CNEV has made no submissions in connection with this appeal.

**10.** Initially, SNG maintained that CNEV had held two regattas, one of which turned out to have been held for children, and the other of which SNG no longer argues qualifies under the Deed.

the past, and will continue to have them in the future. Since CNEV had not yet held an annual regatta at the time it issued its challenge, the court ruled that CNEV was not a qualified challenger under the terms of the Deed. Having reached that conclusion, the court did not reach GGYC's alternative argument that CNEV is not an "organized" yacht club as prescribed by the Deed. Furthermore, the court ruled that GGYC's Notice of Challenge comported with the requirements of the Deed and, therefore, that GGYC was the Challenger of Record. The court rejected SNG's argument that GGYC should be denied such a declaration under the doctrine of unclean hands.

SNG subsequently moved for leave to renew and reargue the court's decision on the grounds that the court improperly adjudicated the validity of GGYC's challenge, as that issue was not properly before the court, and that in any event, GGYC's challenge and certificate did not meet the requirements of the Deed. The court thereafter issued an order to show cause why GGYC's challenge should not be declared invalid and noncompliant with the Deed. After conducting a hearing on the validity of GGYC's challenge, the court consolidated SNG's motion for renewal and reargument with its motion to declare GGYC's Notice of Challenge invalid and denied both motions (2008 NY Slip Op 30782[U]). On or about May 12, 2008, the court issued an order reflecting the foregoing decisions, as well as a separate order directing that the 10-month notice period provided for in the Deed, which is designed to allow the defender to prepare for the race, should commence at the time the order was served (2008 NY Slip Op 32296[U]).

SNG appeals and I vote to affirm.

Clearly, the lynchpin on which this appeal turns is the interpretation to be afforded the phrase "having for its annual regatta" as it is used in the Deed. Our analysis, then, begins with the well established proposition that the settlor's intent controls, and that "[l]ong-settled rules of construction preclude an attempt to divine a settlor's intention by looking first to extrinsic evidence. Rather, the trust instrument is to be construed as written and the settlor's intention determined solely from the unambiguous language of the instrument itself" (*Mercury Bay*, 76 NY2d at 267 [citations omitted]; *see also Matter of Piel*, 10 NY3d 163, 166 [2008] [it is a "fundamental premise that a court must first look within the four corners of a trust instrument to determine the grantor's intent"]; *Central Union Trust Co. v Trimble*, 255 NY 88, 93 [1930] ["We are to

search, not for the probable intention of the settlor merely, but for the intention which the trust deed itself, either expressly or by implication, declares. We are to ascertain the intention from the words used and give effect to the legal consequences of that intention when ascertained"]).

As previously noted, the Deed sets forth an explicit framework within which a yacht club must fall to be considered an eligible challenger for the Cup. That provision expressly states:

> "Any organized Yacht Club of a foreign country, incorporated, patented, or licensed by the legislature, admiralty, or other executive department, *having for its annual regatta an ocean water course on the sea*, or on an arm of the sea, or one which combines both, shall always be entitled to the right of sailing a match for this Cup with a yacht or vessel propelled by sails only and constructed in the country to which the Challenging Club belongs, against any one yacht or vessel constructed in the country of the Club holding the Cup" (emphasis added).

Giving the phrase "having for its annual regatta an ocean water course" its "plain and natural meaning" (*Mercury Bay*, 76 NY2d at 267), I am in agreement with Justice Cahn that such phrase plainly means that the organization must be in possession[11] of an annual regatta or, stated another way, that it has held one or more annual regattas in the past and will continue to do so in the future. Indeed, in order to realize the interpretation propounded by SNG, the Deed would have had to state "having, or intending to have, for its annual regatta" but it does not, and to extrapolate that interpretation from the current language, in my view, strains its meaning beyond reason.

Moreover, taking into consideration the language of the foregoing provision in its entirety, it is clear that the donor's intent was to allow for challenges for the Cup from established yacht clubs that regularly hold annual regattas and not from a club merely organized just for the purpose of challenging for the Cup, without any experience in holding a regatta of this magnitude. While, as a sailing federation, RFEV may very well be capable of organizing and carrying out such an event as a Cup race, that is simply not what the Deed requires and, in my view, it is error to hold otherwise.

---

**11.** *See generally* Webster's Third New International Dictionary 1040 (2002 ed).

To the extent that SNG argues custom and practice in that other challengers which had never held annual regattas were permitted to sail for the Cup in the past,[12] while this is so, those clubs were Mutual Consent Challengers that qualified under the Protocol promulgated by the defender and the Challenger of Record at that time and, thus, fall outside the requirements of the Deed, which only delineates the criteria for the Challenger of Record and leaves "any and all other conditions of the match" to the Challenger of Record and the current trustee. Indeed, the elimination series, which allows for challengers in addition to the Challenger of Record, appears to be a relatively recent development in the history of the Cup, having been instituted in the late 1950s by the New York Yacht Club (*see Mercury Bay*, 76 NY2d at 262).

I am also in agreement with the motion court that GGYC's Notice of Challenge is in compliance with, and therefore valid under, the provisions of the Deed. In *Mercury Bay*, the Court of Appeals noted that the Deed "broadly defines the vessels eligible to compete in the match" (76 NY2d at 266), and "permits the competitors to both construct and race the fastest vessels possible so long as they fall within the broad criteria of the deed . . . [which document makes it] clear that the design and construction of the yachts as well as the races, are part of the competition contemplated" (*id.* at 269).

Here, GGYC's notice and certificate contain all the information required by the Deed, although SNG takes issue with GGYC's description of the challenging vessel in the certificate as a "keel yacht" while specifying dimensions suggestive of a multi-hulled vessel, such as a catamaran, thereby creating an ambiguity and rendering the challenge invalid. It is clear, however, that even if the certificate contained a possible ambiguity, SNG was not at any time actually confused or misled by the certificate, as the record indicates that SNG fully understood that GGYC was going to race a catamaran. The general counsel of SNG's representative racing team, in an affidavit submitted in support of SNG's motion for summary judgment, averred that the dimensions delineated in the certificate "can only be for a multi-hulled vessel—presumably a catamaran," while not referring to any confusing or inconsistent language on that

---

12. The Mercury Bay Boating Club, which was a Challenger of Record, was apparently incorporated only nine months prior to its challenge, but was an established yacht club for approximately 40 years which held approximately 25 races per year.

point. Moreover, SNG's protestations of confusion are belied by its own reply brief in which SNG acknowledges that GGYC has proposed to compete with a "catamaran goliath."

Accordingly, since SNG has failed to raise any material issues of fact, I find GGYC's Notice of Challenge valid.

MOSKOWITZ and ACOSTA, JJ., concur with DEGRASSE, J.; SAXE, J.P., and NARDELLI, J., dissent in a separate opinion by NARDELLI, J.

Orders, Supreme Court, New York County, entered March 18, 2008 and May 13, 2008, reversed, on the law, with costs, Club Náutico Español de Vela declared the Challenger of Record, and the 10 months' notice period tolled until service of a copy of this order.