■ Golden Gate Yacht Club, Respondent, v Société Nautique de Genève, Appellant, et al., Intervenor-Defendant. [892 NYS2d 317]—

Concerning the October 30, 2009 order, by order filed April 7, 2009 (*Golden Gate Yacht Club v Société Nautique de Genève*, 12 NY3d 248 [2009]), the Court of Appeals reinstated a May 12, 2008 order of Supreme Court which provided, insofar as pertinent, that (1) "the location of the match shall be in Valencia, Spain or any other location selected by SNG [or agreed to by the parties], provided SNG notify GGYC in writing not less than six months in advance of the date set for the first challenge match race of the location it has selected for the challenge match races," and (2) that the date of the first race "shall be the date ten calendar months from the date of service of a copy of this order, with notice of entry, upon the attorneys who have appeared herein," or such other date as might be agreed to by the parties (2008 NY Slip Op 32296[U], *4-5 [2008, Cahn,

J.]). Also pertinent is the Deed's requirement that races be conducted between May 1 and November 1 if in the Northern Hemisphere and between November 1 and May 1 if in the Southern Hemisphere. Measuring 10 months from the Court of Appeals' April 7, 2009 order, the first race would have to be conducted on February 8, 2010. Nevertheless, on April 23, 2009, SNG informed GGYC that the first race was to be conducted on May 3, 2010, and that SNG would notify GGYC before December 3, 2009 of a Northern Hemisphere venue. GGYC moved to hold SNG in contempt, arguing that, by virtue of the April 7, 2009 order, the first race had to be conducted on February 8, 2010, and that SNG had to notify GGYC of the location of the races no later than August 8, 2009. SNG responded that it set the date in May, rather than February, because GGYC's Notice of Challenge expressly put forth a Northern Hemisphere challenge and, under the Deed, a Northern Hemisphere race could not take place earlier than May. On May 14, 2009, the court directed SNG to hold the races in February 2010, "as per the order of the Court of Appeals." On August 5, 2009, SNG announced the selection of RAK, which is in the Northern Hemisphere, as the venue of the races. GGYC again objected, arguing that, by virtue of the April 7, 2009 order, and notwithstanding the Deed's requirement that a February race be conducted in the Southern Hemisphere, the races had to be conducted in Valencia, Spain, which is in the Northern Hemisphere, in February 2010, absent agreement otherwise between the parties or SNG's selection of an alternative Deed-compliant location by August 8, 2009. The motion court correctly rejected SNG's selection of RAK. The April 7, 2009 order of the Court of Appeals does not explicitly state that it intended to remove entirely the Deed's hemisphere requirements, or otherwise indicate, as SNG argues, that it was a compromise between GGYC's claimed right to have the race conducted as soon as 10 months after issuance of the order and SNG's claimed right to select a Northern Hemisphere venue. Accordingly, the order should be read as carving out an exception to the Deed's hemisphere requirements in the case of Valencia, and the phrase "or any other location selected by SNG" should be read as "or any other Deed-compliant location selected by SNG." RAK, which is in the Northern Hemisphere, is not a Deed-compliant location for a February race.

Concerning the November 4, 2009 order on appeal, the court correctly found, based on extrinsic evidence, that the Deed excludes rudders for the purpose of measuring the length on load water-line. The Deed, which provides, in relevant part, that the competing vessels, "if single-masted, must measure between 44 and 90 feet on the load water-line," and states that

neither the "center-board" nor "sliding keel" shall be considered part of the vessel for any purposes of measurement, but does not define "load water-line," which is clearly a term of art with specialized meaning in the sport of sailing, is ambiguous as to whether rudders should be considered in measuring the length on load water-line. The mere fact that the Deed expressly only states that the center-board and sliding keel shall not be considered in the measurement does not necessarily mean that all other parts of the vessel, including the rudders, were intended to be considered in making that measurement. Given this ambiguity, the court properly relied on undisputed extrinsic evidence, including New York Yacht Club rules extant at the time the 1887 Deed was settled, showing that length on load water-line is typically measured "exclusive of any portion of the rudder or rudder-stock."

We have considered the remaining contentions and find them unavailing. Concur—Friedman, J.P., Sweeny, Freedman and Abdus-Salaam, JJ.