Tom, J.P
(dissenting). This is ostensibly an action for breach of contract, to which plaintiff has appended claims of an asserted breach of trust, based on defendant’s rejection of plaintiffs application to participate in the America’s Cup yacht race, to be held this year. Since no contract between the parties ever arose, the contract claim must be dismissed. Further, any *215 right to participate in the America’s Cup competition that plaintiff might be said to possess is bestowed solely by the agreement or “Protocol” between defendant Golden Gate Yacht Club (GGYC), as Defender and trustee of the trophy under the Deed of Gift, and nonparty Club Náutico di Roma, as Challenger of Record. Because plaintiff is not a prospective beneficiary under the Deed of Gift, it lacks standing to assert any claim based upon the trust instrument. Thus, the complaint fails to state a cause of action.
Contrary to the position adopted by the majority, true contract actions are amenable to summary disposition on the basis of the documents comprising the parties’ agreement, except where a legitimate ambiguity requires resort to extrinsic evidence to establish the parties’ intent. It is settled that the interpretation of a contract is a question of law for the court (West, Weir & Bartel v Mary Carter Paint Co., 25 NY2d 535, 540 [1969]; Eden Music Corp. v Times Sq. Music Pubis. Co., 127 AD2d 161, 164 [1st Dept 1987]), and where, as here, no cause of action is discern-able, further proceedings will be futile. What the majority fails to appreciate is that, in a contract action, the four corners of the complaint are constrained by the four corners of the agreement.
The race for the America’s Cup is regarded as the most prestigious event in yacht racing, and it is certainly one of the most highly contested — both on and off the water. In the last quarter century, it has been the subject of three controversies brought before this Court. The first involved the propriety of challenging a single-hulled vessel with a catamaran, abrogating what has become the custom of racing yachts of a similar design or class (Mercury Bay Boating Club v San Diego Yacht Club, 150 AD2d 82 [1st Dept 1989], affd 76 NY2d 256 [1990]). The second concerned the requirement that to be recognized as a bona fide challenger for the Cup, a yacht club must have held an annual regatta before giving its notice of challenge; the result there was the disqualification of the challenger designated by the defending club (Golden Gate Yacht Club v Société Nautique de Genéve, 55 AD3d 26 [1st Dept 2008], revd 12 NY3d 248 [2009], on remand 68 AD3d 552 [1st Dept 2009]). This third action, like the others, involves the distinction between what is required by the Deed of Gift and what is mutually agreed upon by the two contenders subject to its terms, as a matter of contract.
The prestige of winning the America’s Cup attracts sailing organizations from around the world, which vie to win and *216 retain possession of the silver Cup for what is typically a champion-reigning period of three to four years, that is, until the next “Challenger” for the trophy officially initiates a new worldwide competition. The trophy derives its name from the schooner America, to which it was awarded after the vessel won a race at Cowes, England on August 21, 1851. By Deed of Gift dated October 24, 1887, the Cup was transferred by its sole surviving owner, George L. Schuyler, to the New York Yacht Club “upon the conditions that it shall be preserved as a perpetual Challenge Cup for friendly competition between foreign countries.”
The Deed of Gift is a trust instrument executed under the laws of New York State (subsequently amended by orders of the Supreme Court of the State of New York dated December 17, 1956 and April 5, 1985). The corpus of the America’s Cup trust is the trophy itself, and the honor and recognition bestowed by the mere possession of the coveted prize is the impetus for the worldwide interest in the sailing competition. Any yacht club to which the Cup is transferred must agree to comply with the terms and conditions of the Deed of Gift. The trust instrument provides:
“Any organized Yacht Club of a foreign country . . . shall always be entitled to the right of sailing a match of this Cup, with a yacht or vessel propelled by sails only and constructed in a country to which the Challenging Club belongs, against any one yacht or vessel constructed in the country of the Club holding the Cup.”
Once a notice of challenge (required to be made on 10 months’ notice) has been received and accepted, the Challenger and Defender of the Cup “may, by mutual consent, make any arrangement satisfactory to both as to the dates, courses, number of trials, rules and sailing regulations, and any and all other conditions of the match, in which case also the ten months’ notice may be waived.” If the contenders “cannot mutually agree upon the terms of a match, then three races shall be sailed, and the winner of two of such races shall be entitled to the Cup.” The Deed of Gift prescribes the type, length and minimum depth of the courses, the timing of the races and the rules to be applied. The default provisions conclude, “The challenged Club shall not be required to name its representative vessel until at a time agreed upon for the start, but the vessel when named must compete in all the races, and each of such races must be completed within seven hours.”
*217 Defendant was represented in the 33rd America’s Cup event by a racing syndicate known as Team Oracle Racing (not a party to this litigation). Consistent with the cycle of recent America’s Cup events, Team Oracle prevailed in the 33rd Cup’s initial elimination series, earning the right to compete against the 32nd Cup winner and Defender, nonparty Société Nautique de Geneve of Switzerland. Defendant succeeded to the position of Defender and trustee of the America’s Cup when its yacht, sailed by Team Oracle, won that match on February 14, 2010.
In February 2010, defendant announced that it had accepted the notice of challenge from Club Náutico di Roma, designating that yacht club as the Challenger of Record under the Deed of Gift against defendant, as the Defender, trustee and holder of the Cup. The two yacht clubs then entered into the agreement known as “the Protocol” dated September 13, 2010, the stated purpose of which “is to promote a competitive regatta for all Competitors consistent with the provisions of the Deed of Gift.” The Protocol recites that applications will be accepted from other yacht clubs. It states that the parties “have agreed to hold a series of races to select the challenger for the Match,” designated the America’s Cup Challenger Series. As pertinent to this dispute, the Protocol provides that defendant “may hold a series of races to select the Defender to represent GGYC in the Match.” Section 8.3 of the Protocol provides that defendant “will review Defender Candidate applications and will accept those it is satisfied have the necessary resources (including but not limited to financial, human, and technological) and experience to have a reasonable chance of winning the America’s Cup Defender Series.” Defendant and Club Náutico di Roma also entered into a “34th America’s Cup Host and Venue Agreement,” which selected San Francisco as the situs of the current America’s Cup race.
The complaint alleges that defendant’s failure to accept plaintiffs application to be a Defender Candidate constitutes a breach of contract, breach of trust and breach of fiduciary duty because, it asserts, plaintiff has all the requisite qualifications set forth in the Protocol to qualify as a Defender Candidate, and defendant failed to consider its application in good faith. The complaint states that defendant’s reason for rejecting plaintiffs application was that it was “not satisfied that [plaintiff] has, or will have the necessary resources (including but not limited to financial, human, and technological) and experience to have a reasonable chance of winning the America’s Cup Defender Series.”
*218 The Deed of Gift is the instrument of a charitable trust (see Golden Gate Yacht Club v Société Nautique de Genéve, 12 NY3d 248 [2009]; Mercury Bay Boating Club v San Diego Yacht Club, 76 NY2d 256, 260 [1990]). Generally, the Attorney General is the party vested with statutory authority to enforce the provisions of a charitable trust on behalf of its beneficiaries (EPTL 8-1.1 [f]; 8-1.4; see Lefkowitz v Lebensfeld, 51 NY2d 442, 445 [1980]), following the well-settled rule that “a possible beneficiary of a charitable trust, or a member of a class of possible beneficiaries, is not entitled to sue for enforcement of the trust” (Aleo Gravure, Inc. v Knapp Found., 64 NY2d 458, 465 [1985]). A limited exception, which has been applied in other America’s Cup cases entertained by the courts, is that standing may exist where “a particular group of people has a special interest in funds held for a charitable purpose . . . and the class of potential beneficiaries is sharply defined and limited in number” (id.).
The express provisions of the Deed of Gift govern the match race to be held between the Defender of the Cup, as trustee, and the Challenger of Record, as potential beneficiary (see Mercury Bay Boating Club, 76 NY2d at 267). Within the ambit of potential beneficiaries are the trustee and the yacht club formally recognized by the trustee as the Challenger of Record. Also accorded standing, as exemplified by Golden Gate Yacht Club, is a club claiming the right to be designated as the Challenger on the ground that the Challenger recognized by the Defender fails to meet the eligibility requirements stated in the Deed of Gift, in which case the would-be Challenger is deemed to possess a sufficient special interest in the corpus of the trust to be entitled to sue for its enforcement.
In sum, standing has been limited to the Defender of the Cup, the recognized Challenger, and a yacht club claiming the right to be designated as the Challenger. Patently, plaintiff can assert no claim to be the Defender because the capacity of Defender and trustee under the Deed of Gift is fulfilled by defendant. Equally, plaintiff can assert no claim to be designated Challenger of Record because it is not a foreign yacht club. Finally, plaintiff does not attack the qualifications of the Challenger recognized by the Defender. Thus, plaintiff cannot accede to the position of one of the two parties recognized under the trust instrument.
There is no merit to plaintiff’s theory that it should be considered a potential beneficiary of the trust because it desires *219 to compete as a Defender Candidate in the America’s Cup Defender Series and ultimately might succeed in being chosen to represent defendant in the match for the America’s Cup. Even if this eventuality were to arise, plaintiff would not be promoted to the position of Defender under the trust instrument. The Defender is defendant Golden Gate Yacht Club. The Deed of Gift affords the Defender the right to designate its vessel at any time before the start of the match. The most to which plaintiff can aspire is the right to sail on behalf of the Defender as the defending vessel; it cannot become the Defender, as that term is used in the trust instrument. Even if plaintiff were designated to sail on behalf of the Defender and won the match, it would merely become the winning yacht. Possession of the trophy would remain in defendant in its capacity as Defender and trustee. Finally, were plaintiff permitted to proceed with its trust claims, standing could be asserted by all of the yacht clubs chosen to participate in the regatta, as well as all those who applied but were not chosen to participate. This is a potentially numerous and amorphous class that is neither “limited in number” nor “sharply defined” so as to come within the exception to the general rule enunciated in Aleo Gravure (64 NY2d at 465). Thus, plaintiff lacks standing, and its causes of action for breach of trust and breach of fiduciary duty were properly dismissed.
As to plaintiffs contract claim, it is elementary that before a court can enforce a contract, it must establish, first, that the parties intended to be mutually bound by an agreement and, second, what the agreement requires of them, both factors implicating the doctrine of definiteness (Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482 [1989], cert denied 498 US 816 [1990]; see also Charles Hyman, Inc. v Olsen Indus., 227 AD2d 270, 275-276 [1st Dept 1996]). It is plaintiffs theory that the parties are mutually bound because the Protocol constitutes an offer, extended by defendant and accepted by plaintiff upon submission of its application and accompanying fee. It concludes that a contract was thereby formed requiring defendant to exercise good faith in reviewing the application, which defendant is alleged to have breached in various ways set forth in the complaint. Plaintiff posits that the Protocol “memorializes the Deed of Gift’s hopes for fair play,” and charges that defendant breached this duty by manufacturing “lame” excuses to deny plaintiff the right to participate in the competition as a Defender Candidate.
*220 Dispositive of the question of contract formation in general is whether indeed an offer has been made (see Kasowitz, Benson, Torres & Friedman, LLP v Duane Reade, 98 AD3d 403 [1st Dept 2012], affd 20 NY3d 1082 [2013]); if so, whether the offer invites acceptance by the means used (see Defeo v Amfarms Assoc., 161 AD2d 904 [3d Dept 1990]); and whether all conditions required for a valid acceptance have been fulfilled (see King v King, 208 AD2d 1143 [3d Dept 1994]). By imposing a contractual obligation on defendant, when there is none, the majority ignores the clear language of the Protocol relating to Defender applications.
The Protocol, by its express terms under section 8.3, extends only an invitation to prospective Defender Candidates to submit an application that, after review, defendant “will accept” if “it is satisfied” that the applicant meets the specified criteria. This provision clearly negates any mutual assent by defendant to be bound to an agreement with an applicant for Defender Candidate (see generally Thome v Alexander & Louisa Calder Found., 70 AD3d 88, 103-104 [1st Dept 2009], lv denied 15 NY3d 703 [2010] [language contained in invitation does not manifest an intent to be bound, warranting dismissal of breach of contract claim]; Kowalchuk v Stroup, 61 AD3d 118, 121 [1st Dept 2009] [“To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound”]).
There is nothing in the unambiguous language of section 8.3 or within the four corners of the contract that would impose a contractual duty upon defendant to accept an applicant for Defender Candidate upon submission of a compliant application. Rather, the solicitation of applications initiates a process of evaluation of the credentials and capabilities of the applicants for the purpose of determining those that are most suitable for a particular purpose (see Wright v Ford Motor Co., 111 AD2d 810 [2d Dept 1985]). The soliciting organization may set such standards for candidates that it deems appropriate, and where the issue has been directly considered, the courts have declined to interfere in what has been regarded as an administrative matter (see Matter of Poliak v Conway, 276 App Div 435, 437 [3d Dept 1950], lv denied 301 NY 816 [1950]). Thus, an organization is free to accept or reject any applicant in the exercise of its judgment (see Sabetay v Sterling Drug, 69 NY2d 329, 333 [1987] [employment]; Sitomer v Half Hollow Hills Cent. School Dist., 133 AD2d 748 [2d Dept 1987] [participation in high school *221 athletics program]; Matter of Lesser v Board of Educ. of City of N.Y., 18 AD2d 388, 390 [2d Dept 1963] [college admission]). Since defendant did not accept plaintiff’s application, no contract arose for which an action for breach can be maintained.
The Protocol’s use of the term “satisfied” indicates that the assessment of an applicant’s likelihood of winning the America’s Cup Defender Series is to be made in the exercise of defendant’s unfettered judgment (see Fursmidt v Hotel Abbey Holding Corp., 10 AD2d 447, 449-450 [1st Dept 1960]). As the Fursmidt Court stated, “The performance here called for is much removed from that involving mechanical fitness, utility or marketability,” which is subject to some “positive, objective standard” (id. at 450 [internal quotation marks omitted]). Rather, “in cases involving taste and judgment such standards of reasonableness cannot be established” (id.). Thus, even assuming a valid contract, the determination whether to utilize plaintiff’s services as a competitor in its regatta is a matter relegated to the exercise of defendant’s judgment and is not subject to judicial interference.
There is no merit to plaintiffs suggestion that the assessment of a prospective Defender Candidate implicates defendant’s fiduciary duties, irrespective of the recitation under Article 3 of the Protocol that “GGYC (in its capacity as trustee), Challenger of Record (in its capacity as Challenger of Record) [and others involved in the regatta] . . . shall: (i) act in the best interests of all Competitors collectively . . . and (ii) not unreasonably favor the interests of any Competitor over another.” These provisions clearly make reference, and pertain, to Defender Candidates (and Challenger Candidates) as competitors. This language has no application to plaintiff, which is not a “Competitor” (defined in the Protocol as “a Defender Candidate or a Challenger”) since its application to compete in the contemplated regatta as a Defender Candidate has not been accepted. Merely reciting defendant’s capacity as Defender in the Protocol does not implicate defendant’s fiduciary duties under the Deed of Gift. In that regard, it should be noted that the Deed of Gift expressly governs only the match between Defender and Challenger (see Mercury Bay Boating Club, 76 NY2d at 267 [“the deed ensures a ‘match’ which will be a one-on-one competition”]), with the proviso that the contestants “may, by mutual consent,” depart from “any and all other conditions of the match.” The Deed of Gift is silent about such preliminaries as how the defending yacht is to be chosen, except to require *222 that the selection be made by race time. Thus, the Defender and Challenger are free to contract as they deem appropriate with respect to the manner in which the competing vessels are designated. Since defendant’s obligations with respect to the selection of contestants are, by contract, subject to its own satisfaction, defendant was entitled to accept or reject plaintiffs application as it saw fit.
To support its contention that a binding contract was formed, plaintiff relies on Sargent v New York Daily News, L.P., (42 AD3d 491 [2d Dept 2007]), for the proposition “ ‘that the rules of a contest constitute a contract offer and that the participant’s [entry into] the contest constitute [s] an acceptance of that offer’ ” (at 493, quoting Diop v Daily News, L.P., 11 Misc 3d 1083[A], 2006 NY Slip Op 50671[U], *3 [2006]), which plaintiff advances as a general principal of law. Thus, plaintiff reasons, merely by submitting to defendant its application to be a participant in the racing events with the required fee provided in the Protocol, a binding contract was formed, imposing upon defendant the obligation to exercise good faith in the selection of Defender Candidates.
There is no question that under certain circumstances the mere participation in a contest imposes a contractual obligation on the sponsor. In Sargent, the use of a daily game card by the plaintiff was held to constitute the acceptance of an offer to join the contest, binding the plaintiff to the rules printed on the reverse side (see also Fujishima v Games Mgt. Serus., 110 Misc 2d 970 [Sup Ct, Queens County [1981]). The matter before this Court, however, is readily distinguishable from such contests, since it involves considerably more than a claim to winnings under circumstances where participation is limited to the purchase, or even the mere use, of a game card. The process at issue is not, by analogy, the mere purchase of a game card; rather, the applicant must first be approved by the Defender and then participate in a series of yacht races with the objective of winning the America’s Cup Defender Series. Notably, the game card cases and others cited by plaintiff involve winners or asserted winners of a contest. To consider plaintiffs submission of an application comparable to the presentation of a winning ticket would accord overly expansive scope to Woody Allen’s observation, “Eighty percent of success is showing up.” Here, plaintiffs application was rejected as unsatisfactory before the contest had even begun.
Plaintiff cites Robertson v United States (343 US 711, 713 [1952]) for the proposition that “acceptance by the contestants *223 of the offer tendered by the sponsor of the contest creates an enforceable contract.” Unlike plaintiff, however, the contestant in Robertson had actually won the musical competition in question. Moreover, the narrow issue decided was whether, for tax classification purposes, the payment of winnings by a sponsor of a contest comprises the discharge of a contractual obligation, rather than a gift (id. at 713). Since the Robertson Court was not confronted with an executory contract but one that had been fully performed, the issue of formation — particularly whether the sponsor of the musical competition had made an offer that the winning contestant could accept — was not before it. Likewise, Dalton v Educational Testing Serv. (87 NY2d 384, 389 [1995]) sheds no light on the question whether the submission of an application to participate in a sporting event constitutes an acceptance of an offer to participate. In Dalton, the Court of Appeals did not discuss formation, but simply stated that “[b]y accepting [Educational Testing Service]’s standardized form agreement . . . Dalton entered into a contract with ETS.” It should also be noted that, in marked contrast to the matter at bar, Dalton does not involve qualifications that an applicant must meet in order to participate in the testing process.
The law imposes no obligation on an organization to exercise its judgment to select any particular applicant for a particular function, no matter how qualified; rather, it is expected that an organization will act in its own best interests, which would not be served by rejecting qualified candidates. Here, defendant points out that plaintiff does not allege that a proposed team member of plaintiff has ever competed in an America’s Cup race or that the plaintiff team has ever competed together on the same boat in a regatta. It is further noted that plaintiffs ability to raise capital and secure the services of an expert boat designer appears to depend on defendant’s granting its application. Even assuming, arguendo, that there were a contractual right to be enforced, which clearly there is not, plaintiffs limited experience as a competitive sailing organization and its questionable ability to raise capital, retain an expert boat designer and assemble a competitive, financially backed team that could successfully compete in the Defender Series undermine its claim of bad faith.
The majority’s holding deprives defendant of its contractual right under the Protocol to decide what is in its best interests in promoting the America’s Cup Defender Series, a duty it was charged with as Defender under the trust instrument, and *224 substitutes some ad hoc standard to be judicially formulated at trial. As the Third Department noted in Matter of Pollak (276 App Div at 437-438), the courts are ill equipped to devise the criteria for assessing a candidate’s qualifications or to administer the organization’s application of those criteria, a sentiment that finds particular application in the context of such a high-level sailing event.
Finally, plaintiffs claim must be rejected as a matter of policy. To permit a contract action to be maintained by any person or group that has been denied the right to participate in an athletic event would subject the courts to a potentially enormous volume of litigation and involve them in the assessment of athletic abilities, an area in which they lack expertise. It is simply not the province of the courts to decide, for instance, whether any particular applicant should be accorded the right to participate in the New York City Marathon or whether a promising player should be selected to play for a professional sports team or, for that matter, whether a particular seventh-grader should be permitted to play on a local high school tennis team (see Sitomer, 133 AD2d at 748).
Whether plaintiff has the necessary qualifications “to have a reasonable chance of winning the America’s Cup Defender Series” and so to be selected as a Defender Candidate, as the Protocol provides, “ ‘is a knotty point, and should have been submitted to the arbitration of sportsmen’ ” (Mercury Bay Boating Club, 150 AD2d at 101 [Rubin, J., concurring], quoting Pier-son v Post, 3 Caines 175, 180 [1805, Livingston, J., dissenting]). The substance of the complaint, with its emphasis on defendant’s asserted failure to exercise “good faith,” is that defendant has been treated unfairly in the selection process. As stated in Pierson and reiterated in Mercury Bay, in the absence of fiduciary or equitable considerations, the function of the courts is to decide what is within the bounds of the law, an assessment that does not embrace determining what is fair in the context of a sporting event.
Accordingly, the order should be affirmed.
Feinman and Clark, JJ., concur with Acosta, J.; Tom, J.E, dissents in a separate opinion.
Order, Supreme Court, New York County, entered January 18, 2013, modified, on the law, to deny the motion as to the breach of contract claim, and otherwise affirmed, without costs.