T.C. Memo. 2008-244

UNITED STATES TAX COURT

DAVID ISAAC PLOTINSKY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4094-07.                    Filed October 29, 2008.

David Isaac Plotinsky, pro se.

Kelly R. Morrison-Lee, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency of $761
in petitioner's Federal income tax (tax) for his taxable year
2004.

The issue for decision is whether petitioner is entitled for
his taxable year 2004 to exclude from gross income under section

102(a)[1] $3,043 of a certain loan of petitioner that the creditor discharged.  We hold that he is not.

### FINDINGS OF FACT

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.

Petitioner resided in Washington, D.C., at the time he filed the petition in this case.

During 1993 through 1997, petitioner financed a portion of his college education through a Federal loan with United Student Aid Funds, Inc. (petitioner's college loan).  During 1997 through 2000, petitioner financed a portion of his law school education with several Federal loans with Access Group (petitioner's law school loans).  (We shall refer collectively to petitioner's college loan and petitioner's law school loans as petitioner's Federal student loans.)

As part of its business, Key Bank USA/American Education Services (AES) offered to consolidate student loans like petitioner's Federal student loans.  As an incentive designed to induce individuals with student loans to consolidate those loans with AES, AES offered an on-time payment incentive program (AES's incentive program).  Pursuant to AES's incentive program, if an

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

individual were to consolidate the individual's student loans by taking out a loan from AES (AES loan) and the individual were to make 36 consecutive on-time monthly payments on the AES loan, AES would discharge a portion of that loan.

Petitioner was aware of AES's incentive program when in August 2001, after graduating from law school, he consolidated petitioner's Federal student loans through AES (petitioner's consolidated student loan). The promissory note and the repayment schedule that petitioner signed and that evidenced petitioner's consolidated student loan did not address any incentive program with respect to the repayment of that loan.

During 2004, the year at issue, petitioner's employer, the United States House of Representatives, made $6,288 of payments on petitioner's behalf on petitioner's consolidated student loan. During that year, petitioner did not make any additional payments on that loan.

In 2004, pursuant to AES's incentive program and as a result of 36 consecutive on-time payments having been made on petitioner's consolidated student loan, AES discharged $3,043 of that loan.

AES issued Form 1099-C, Cancellation of Debt (2004 Form 1099-C), to petitioner for his taxable year 2004. That form showed $3,043.28 as the amount of debt canceled. The instructions to the 2004 Form 1099-C that AES sent to petitioner stated

in pertinent part: "Generally, if you are an individual, you must include the canceled amount on the 'Other Income' line of Form 1040. * * * However, some canceled debts are not includible in your income."

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for his taxable year 2004 (petitioner's 2004 return). In that return, petitioner reported gross income of $76,917 that did not include the $3,043.28 of petitioner's consolidated student loan that AES discharged.

Petitioner attached to petitioner's 2004 return a document (petitioner's attachment to petitioner's 2004 return) that stated in pertinent part:

> I received a Form 1099-C from AES Graduate & Professional Loan Services ("AES"), which stated a cancellation of debt in the amount of $3043.28. I am not reporting this amount as income because it is my reading of Internal Revenue Service Pub. 525, at 17-18, that this cancellation constitutes a gift rather than income.
>
> AES is the lender with which I consolidated my law school loans approximately three years ago. As an incentive to select AES as my lender, AES offered a reduction in the total amount of my loans, and it is this offer that forms the entire basis for the debt cancellation of $3043.28. The offer was contingent upon my making 36 consecutive on-time monthly payments, and now that this has been achieved the debt cancellation is locked in.

On November 13, 2006, respondent issued a notice of deficiency to petitioner for his taxable year 2004. In that notice,

respondent determined to include in gross income the $3,043[2] of petitioner's consolidated student loan that AES discharged.

## OPINION

Petitioner bears the burden of proving that the determination in the notice is erroneous.[3]  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  That this case was submitted fully stipulated does not change that burden or the effect of a failure of proof.  See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

It is petitioner's position that he is entitled for his taxable year 2004 to exclude from gross income under section 102(a) $3,043 of petitioner's consolidated student loan that AES discharged in that year.

Section 61(a) defines the term "gross income" broadly to mean all income from whatever source derived.  Generally, income from the discharge of indebtedness is includible in gross income.  Sec. 61(a)(12).  There are, however, certain exceptions to that general rule.  One of those exceptions on which petitioner relies is found in section 102(a).  As pertinent here, section 102(a)

---

[2]We presume that respondent rounded down to the nearest dollar the $3,043.28 shown in the 2004 Form 1099-C.  For convenience, when referring to the amount of petitioner's consolidated student loan that AES discharged in 2004, we shall hereinafter round that amount down to the nearest dollar.

[3]Petitioner does not claim that the burden of proof shifts to respondent under sec. 7491(a).

excludes from gross income the value of property acquired by gift. If the discharge of a loan constitutes a gift from the creditor to the debtor, the debtor has no income as a result of that discharge. See id.

In support of petitioner's position under section 102(a), petitioner relies on Helvering v. Am. Dental Co., 318 U.S. 322 (1943), and argues that, because AES received nothing from petitioner in return for its discharge of $3,043 of petitioner's consolidated student loan, the amount discharged was a gift from AES to him. According to petitioner,

> The cancellation of a portion of Petitioner's debt by AES falls squarely under the Supreme Court's definition of a gift as "a release of something to the debtor for nothing." [Helvering v. Am. Dental Co., 318 U.S. 322, 331 (1943).] * * * regardless of the AES "on time incentive" program, Petitioner was **already** under an independent obligation under the terms of his loan agreement with AES to make continual timely payments. Because the "on time incentive" merely cancelled a portion of Petitioner's debt for doing something that he was already contractually obligated to do anyway, the cancellation of debt was "a release of something to the debtor for nothing" and therefore can only be construed as a gift. * * *

Petitioner's reliance on Helvering v. Am. Dental Co., supra, to support his position under section 102(a) is misplaced. In contrast to the finding in that case that there was "a release of something to the debtor [the taxpayer] for nothing," id. at 331, we find on the record before us that petitioner has failed to carry his burden of establishing that AES's discharge of $3,043 of petitioner's consolidated student loan pursuant to AES's

incentive program was "a release of something to the debtor [petitioner] for nothing".  Id.  Indeed, we have found on that record that AES offered AES's incentive program in order to induce individuals like petitioner to consolidate their student loans with AES.  We have also found on the record before us that in 2004, pursuant to AES's incentive program and as a result of 36 consecutive on-time payments having been made on petitioner's consolidated student loan, AES discharged $3,043 of that loan. As petitioner acknowledged in petitioner's attachment to petitioner's 2004 return:  "As an incentive to select AES as my lender, AES offered a reduction in the total amount of my loans, and it is this offer that forms the entire basis for the debt cancellation of $3043.28."  On the record before us, we find that petitioner has failed to carry his burden of establishing that AES received nothing from petitioner in return for its discharge of $3,043 of petitioner's consolidated student loan.

Even if we had found that AES received nothing in return for its discharge of $3,043 of petitioner's consolidated student loan, petitioner's reliance on Helvering v. Am. Dental Co., supra, nonetheless would be misplaced.  In that case, the taxpayer owed delinquent rent to his lessor and delinquent interest to his creditors.  Id. at 323-324.  The taxpayer's lessor discharged a portion of that delinquent rent, and the taxpayer's creditors discharged all of that delinquent interest.  Id.  The

taxpayer argued that the discharged rent and the discharged interest constituted gifts under section 22(b)(3) of the Revenue Act of 1936, a predecessor of section 102(a).[4] Id. at 324. The Supreme Court of the United States (Supreme Court) held that the taxpayer's discharged rent and discharged interest constituted gifts under section 22(b)(3) of the Revenue Act of 1936. Id. at 331. In so holding, the Supreme Court explained that the "forgiveness was gratuitous, a release of something to the debtor for nothing, and sufficient to make the cancellation here gifts within the statute [section 22(b)(3) of the Revenue Act of 1936]." Id.

However, in Commissioner v. Jacobson, 336 U.S. 28, 50-51 (1949), the Supreme Court clarified what it said in Helvering v. Am. Dental Co., supra, and the meaning of the term "gift" in section 22(b)(3) of the Revenue Act of 1938 and section 22(b)(3) of the 1939 Code.[5] In Jacobson, the taxpayer acquired a 99-year

---

[4]Sec. 22(b)(3) of the Revenue Act of 1936, ch. 690, 49 Stat. 1657, was reenacted in the Revenue Act of 1938, ch. 289, sec. 22(b)(3), 52 Stat. 458, and was codified as sec. 22(b)(3) of the Internal Revenue Code of 1939 (1939 Code), ch. 2, 53 Stat. 10. The Revenue Act of 1942, ch. 619, sec. 111(a), 56 Stat. 809, made changes not pertinent here to sec. 22(b)(3) of the 1939 Code. Sec. 22(b)(3) of the 1939 Code, as amended by the Revenue Act of 1942, was reenacted with changes not pertinent here as sec. 102(a) of the Internal Revenue Code of 1954 (1954 Code), ch. 736, 68A Stat. 28. Sec. 102(a) of the 1954 Code was reenacted with no changes as sec. 102(a) of the Internal Revenue Code of 1986. Tax Reform Act of 1986, Pub. L. 99-514, sec. 2, 100 Stat. 2095.

[5]See supra note 4.

leasehold interest in certain property and the improvements on that property.  Id. at 32.  Several years later the taxpayer borrowed money from a bank.  Id.  As security for that loan, the taxpayer executed 200 bonds secured by a trust deed on his leasehold interest and the improvements thereon.  Id.  Certain persons (bondholders) purchased those bonds.  Id. at 33.  There-after, the value of the taxpayer's leasehold interest and the improvements thereon sharply declined, and the taxpayer, who was solvent although in difficult financial circumstances, repur-chased at less than face value his bonds from the bondholders.  Id. at 34-35.  The issue presented in Jacobson was whether the difference between the face value of each of the bonds over the amount that the taxpayer paid to each bondholder was a gift to the taxpayer by each bondholder under section 22(b)(3) of the Revenue Act of 1938 for one of the years involved in Jacobson and under section 22(b)(3) of the 1939 Code for the remaining two years involved in Jacobson.  Id. at 47-48.  The Supreme Court held that no gifts occurred under that section.  Id. at 52.  In so holding, the Supreme Court reasoned that there was no gift under section 22(b)(3) of the Revenue Act of 1938 and section 22(b)(3) of the 1939 Code unless the facts established that the transferor intended to make a gift.  Id. at 51.  According to the Supreme Court:

> There was no suggestion in the evidence or the findings
> that any bondholder was acting from any interest other

than his own.  Each transaction was a sale.  The seller sought to get as high a price as he could for the bond and the buyer sought to pay as low a price as he could for the same bond.  If the transaction had been completely on the open market through a stock exchange, the conduct and intent of each party could have been the same and there would have been little, if any, basis for any claim that the respondent's gain was not taxable income.  The mere fact that the seller knew that he was selling to the maker of the bond as his only available market did not change the sale into a gift.  In the absence of proof to the contrary, the intent of the seller may be assumed to have been to get all he could for his entire claim.  Although the sales price was less than the face of the bond and less than the original issuing price of the bond, there was nothing to indicate that the seller was not getting all that he could for all that he had.  There is nothing in the evidence or findings to indicate that he intended to transfer or did transfer something for nothing. * * * The seller did not first release the maker from a part of the maker's obligation and, having made the maker a gift of that release, then sell him the balance of the bond or vice versa.  If the seller actually had intended to give the maker some gift[,] the natural reflection of that gift would have been a credit on the face of the bond or at least some record or testimony evidencing the release. * * * It is quite possible that a bondholder might make a gift of an entire bond to anyone, including the maker of it.  The facts and findings in this case do not establish any such intent of the seller to make a gift in contradiction of the natural implications arising from the sales and assignments which he made.  It is conceivable, although hardly likely, that a bondholder, in the ordinary course of business and without any express release of his debtor, might have sold part of his claims on the bonds he held at the full face value of those parts and then have made a gift of the rest of his claims on those bonds to the same debtor "for nothing."  It is that kind of extraordinary transaction that the respondent asks us, as a matter of law, to read into the simple sales which actually took place and from which he derived financial gains.  We are unable to do so on the findings before us. * * *

Id. at 50-51.

In Commissioner v. Duberstein, 363 U.S. 278 (1960), the Supreme Court further clarified the meaning of the term "gift" in section 22(b)(3) of the 1939 Code.[6] Duberstein involved two consolidated cases. Id. at 279. In one of those cases, the taxpayer, Mr. Duberstein, was president of a company that had done business for a number of years with another company, Mohawk Metal Corporation (Mohawk). Id. at 280. From time to time, the president of Mohawk, Mr. Berman, asked Mr. Duberstein whether he knew of potential customers for Mohawk's products, and Mr. Duberstein provided Mr. Berman with some names. Id. Thereafter, Mr. Berman telephoned Mr. Duberstein and told him that the information that Mr. Duberstein gave Mr. Berman regarding poten- tial customers had been so helpful that he wanted to give Mr. Duberstein a present. Id. Mr. Duberstein told Mr. Berman that he owed him nothing. Id. Mr. Berman insisted that Mr. Duberstein accept a Cadillac as a gift from Mohawk, and Mr. Duberstein ultimately relented and accepted the Cadillac. Id. at 280-281. Mr. Duberstein excluded the Cadillac from his gross income as a gift under section 22(b)(3) of the 1939 Code. Id. at 281. The Commissioner of Internal Revenue (Commissioner) deter- mined that the value of the Cadillac was includible in Mr. Duberstein's gross income. Id. The Tax Court of the United States, the predecessor of this Court, upheld that determination.

_____

[6]See supra note 4.

Id. The United States Court of Appeals for the Sixth Circuit (Court of Appeals for the Sixth Circuit) disagreed and reversed the decision for the Commissioner of the Tax Court of the United States. Id. The Supreme Court reversed the judgment of the Court of Appeals for the Sixth Circuit. Id. at 293.

In the other case involved in Duberstein, the taxpayer, Mr. Stanton, had been employed by Trinity Church (Trinity) for approximately ten years when its board of directors (Trinity's board) terminated the treasurer of Trinity Operating Co. (treasurer), Trinity's wholly owned subsidiary that managed its real estate holdings. Id. at 281-282. At a special meeting of Trinity's board, Mr. Stanton asked Trinity's board to reconsider the treasurer's termination. Id. at 282. The minutes from that meeting reflected that "'resentment was expressed as to the "presumptuous" suggestion that the action of the Board, taken after long deliberation, should be changed.'" Id. Trinity's board, however, did give the treasurer the opportunity to resign rather than be discharged. Id. When the treasurer did not resign, Trinity's board terminated his employment. Id. In a resolution, Trinity's board agreed to pay the treasurer six months' salary. Id. at 282-283. Thereafter, Mr. Stanton submitted his resignation "in order to avoid any such embarrassment or question at any time as to his willingness to resign if the Board desired". Id. at 283. Trinity's board did not accept his

resignation.  Id.  Mr. Stanton again submitted his resignation the following week, and Trinity's board accepted it.  Id.  After Mr. Stanton's resignation, Trinity's board passed a resolution that stated in pertinent part:  "'in appreciation of the services rendered by Mr. Stanton . . . a gratuity is hereby awarded to him of Twenty Thousand Dollars, payable to him in equal installments of Two Thousand Dollars at the end of each and every month'".  Id. at 281-282.  After Trinity's board passed the resolution regarding Mr. Stanton, a member of that board stated:  "We were all unanimous in wishing to make Mr. Stanton a gift."  Id. at 282.  Mr. Stanton excluded the total amount of the payments from his gross income as a gift under section 22(b)(3) of the 1939 Code.  Id. at 283.  The Commissioner determined that that total amount was includible in Mr. Stanton's gross income.  Id.  Mr. Stanton paid the tax attributable to that determination and commenced suit for a refund in the United States District Court for the Eastern District of New York (District Court).  Id.  The District Court held that the total amount of payments to Mr. Stanton constituted a gift under section 22(b)(3) of the 1939 Code.  Id.  The United States Court of Appeals for the Second Circuit (Court of Appeals for the Second Circuit) disagreed and reversed the judgment of the District Court.  Id.  The Supreme Court vacated the judgment of the Court of Appeals for the Second Circuit and remanded the case to the District Court "for further

proceedings not inconsistent with this opinion."  Id. at 293.

In considering the issue under section 22(b)(3) of the 1939 Code presented in each of the cases involved in Duberstein, the Supreme Court set forth the principles under which each of those issues was to be resolved.  According to the Supreme Court:

> the statute [section 22(b)(3) of the 1939 Code] does not use the term "gift" in the common-law sense, but in a more colloquial sense.  This Court has indicated that a voluntarily executed transfer of * * * property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute.  For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift.  Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730 [(1929)].  And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41 [(1937)], it is not a gift. * * * A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," Commissioner v. LoBue, 351 U.S. 243, 246 [(1956)]; "out of affection, respect, admiration, charity, or like impulses." Robertson v. United States, * * * [343 U.S. 711, 714 (1952)].  And in this regard, the most critical consideration * * * is the transferor's "intention." Bogardus v. Commissioner, 302 U.S. 34, 43 [(1937)]. "What controls is the intention with which payment, however voluntary, has been made."  Id., at 45 (dissenting opinion).
>
> The Government says that this "intention" of the transferor cannot mean what the cases on the common-law concept of gift call "donative intent."  With that we are in agreement, for our decisions fully support this. Moreover, the Bogardus case itself makes it plain that the donor's characterization of his action is not determinative--that there must be an objective inquiry as to whether what is called a gift amounts to it in reality. * * * [Fn. refs. omitted.]

Id. at 285-286.

In the case involving Mr. Duberstein, the Supreme Court applied the above-quoted principles and concluded:

> we are in agreement, on the evidence we have set forth, that it cannot be said that the conclusion of the Tax Court was "clearly erroneous."  It seems to us plain that as trier of the facts it was warranted in concluding that despite the characterization of the transfer of the Cadillac by the parties and the absence of any obligation, even of a moral nature, to make it, it was at bottom a recompense for Duberstein's past services, or an inducement for him to be of further service in the future.  We cannot say with the Court of Appeals that such a conclusion was "mere suspicion" on the Tax Court's part. * * *

Id. at 291-292.

In the case involving Mr. Stanton, the Supreme Court applied the above-quoted principles and concluded:

> it is critical here that the District Court as trier of fact made only the simple and unelaborated finding that the transfer in question was a "gift."  To be sure, conciseness is to be strived for, and prolixity avoided, in findings; but, * * * there comes a point where findings become so sparse and conclusory as to give no revelation of what the District Court's concept of the determining facts and legal standard may be. * * * Such conclusory, general findings do not constitute compliance with Rule 52's[7] direction to "find the facts specially and state separately . . . conclusions of law thereon."  While the standard of law in this area is not a complex one, we * * * think the unelaborated finding of ultimate fact here cannot stand as a fulfillment of these requirements.  It affords the reviewing court not the semblance of an indication of the legal standard with which the trier of fact has

_____

[7]In referring to "Rule 52", the Supreme Court was referring to Fed. R. Civ. P. 52(a) in effect when the District Court entered its judgment.  That rule was amended with changes not pertinent here.  See Fed. R. Civ. P. 52(a).

approached his task.  For all that appears, the District Court may have viewed the form of the resolution or the simple absence of legal consideration as conclusive.  While the judgment of the Court of Appeals cannot stand, * * * [we] think there must be further proceedings in the District Court looking toward new and adequate findings of fact. * * *  [Fn. ref. omitted.]

Id. at 292-293.

In relying solely on Helvering v. Am. Dental Co., 318 U.S. 322 (1943), to support his position that AES's discharge of $3,043 of petitioner's consolidated student loan constituted a gift under section 102(a), petitioner fails to acknowledge that the Supreme Court in Commissioner v. Jacobson, 336 U.S. at 50-51, and Commissioner v. Duberstein, 363 U.S. at 292-293, requires us to consider AES's intention in discharging $3,043 of petitioner's consolidated student loan.  We shall do so now.

We have found that AES offered AES's incentive program in order to induce individuals like petitioner to consolidate their student loans with AES.  We have also found that in 2004, pursuant to AES's incentive program, AES discharged $3,043 of petitioner's consolidated student loan because 36 consecutive on-time payments had been made on that loan.  On the record before us, we find that AES did not intend to discharge $3,043 of petitioner's consolidated student loan out of "detached and disinterested generosity", Commissioner v. LoBue, 351 U.S. 243, 246 (1956), or "out of affection, respect, admiration, charity or like impulses", Robertson v. United States, 343 U.S. 711, 714 (1952).

See Commissioner v. Duberstein, supra at 285.  On that record, we further find that petitioner has failed to carry his burden of establishing that, in discharging $3,043 of petitioner's consolidated student loan, AES intended to make a gift to him.[8]

Based upon our examination of the entire record before us, we find that the $3,043 of petitioner's consolidated student loan that AES discharged is not excludable for his taxable year 2004 from his gross income under section 102(a).  On that record, we further find that petitioner must include for that year that amount in his gross income.[9]

We have considered all of the parties' respective contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

---

[8]In making our findings regarding AES's intention in discharging $3,043 of petitioner's consolidated student loan, we have not relied merely on the 2004 Form 1099-C that AES issued to petitioner and that showed $3,043 as the amount of debt canceled. We have relied upon the entire record before us in making those findings.

[9]On brief, petitioner further argues that, even if we were to find that the $3,043 of petitioner's consolidated student loan that AES discharged is includible in his gross income, he should recognize that income over the remaining life of petitioner's consolidated student loan. We reject that argument. Income from the discharge of indebtedness is income for the year in which the indebtedness is discharged. Sec. 61(a)(12); see Jelle v. Commissioner, 116 T.C. 63 (2001).

To reflect the foregoing,

<u>Decision will be entered</u>
<u>for respondent</u>.